In the Matter of the Claim of PETER MODRA, Respondent, against JOHN LITTLE et al., Appellants.

THE STATE INDUSTRIAL COMMISSION, Respondent.

**Workmen's Compensation Law — erroneous award for permanent loss of use of claimant's foot — fact that claimant suffered compound fracture of the leg does not create presumption of loss of use of foot.**

The fact that the claimant had sustained a compound fracture of the leg, between the ankle and the knee, does not create a presumption that he had lost the use of his foot under the provisions of the Compensation Law (Cons. Laws, ch. 67, § 15, subd. 3). Section 21 relating to presumptions is not applicable to such a case. The burden of establishing a loss of the use of the foot in such case rests on the claimant, and in that respect claimant's case failed as the record herein does not disclose any evidence to sustain the conclusion of the commission. (*Matter of Grammici* v. *Zinn*, 219 N. Y. 322; *Matter of Kanzar* v. *Acorn Mfg. Co.*, 219 N. Y. 326, followed.)

*Matter of Modra* v. *Little*, 181 App. Div. 914, reversed.

(Argued April 26, 1918; decided May 28, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 17, 1917, affirming an award of the state industrial commission made under the Workmen's Compensation Law.

The facts, so far as material, are stated in the opinion.

*William H. Foster, T. C. Jones* and *James B. Henney* for appellants. The burden of proof that there is a loss of the use of a foot rests on the claimant; there is no presumption under the Compensation Law that there is a loss of the use of a foot. (*Grammici* v. *Zinn*, 219 N. Y. 322; *Kanzar* v. *Acorn Mfg. Co.*, 219 N. Y. 326; *Boscarino* v. *Carfagno & Dragonette, Inc.*, 220 N. Y. 323; *Carkey* v. *Island Paper Co.*, 177 App. Div. 73.)

There was no evidence supporting the finding and award of the commission that the claimant had lost the entire use of his foot. (*Grammici* v. *Zinn*, 219 N. Y. 322; *Kanzar* v. *Acorn Mfg. Co.*, 219 N. Y. 326; *Boscarino* v. *Carfagno & Dragonette, Inc.*, 220 N. Y. 323; *Carkey* v. *Island Paper Co.*, 177 App. Div. 73.) Where the final result of an injury cannot be determined with reasonable definiteness, it is error to make a final award for the loss of or loss of use of a member. (*Arcangelo* v. *Gallo & Laguidara*, 163 N. Y. Supp. 727; *Boscarino* v. *Carfagno & Dragonette, Inc.*, 220 N. Y. 323.) ·

*Merton E. Lewis*, Attorney-General (*E. C. Aiken* of counsel), for respondent.

HOGAN, J. August 29th, 1916, the claimant while engaged in the regular course of his employment as a painter fell from an upright ladder and sustained a compound fracture of the left leg and bruises. September 20th, 1916, an agreement was entered into between the claimant and the employer for the payment of compensation at the rate of $15 weekly for total temporary disability between August 29th, the date of the accident, and September 19th, 1916. The agreement was subsequently approved by the commission and further payments thereunder were made by the employer down to April 25th, 1917. In May, 1917, about nine months subsequent to the accident, after a hearing before the industrial commission, an award was made to claimant for the permanent loss of the use of his left foot under subdivision 3, section 15 of the Workmen's Compensation Law, at the rate of $19.23 per week for two hundred and five weeks from the date of the accident, payments of $15 per week made to claimant to be credited thereon.

From the determination of the commission the employer and insurance carrier appealed to the Appellate Division. The determination was there affirmed by a divided court,

and from the order there made an appeal was perfected to this court.

Section 15, subdivision 3, Workmen's Compensation Law (Cons. Laws, ch. 41), provides:

" *Permanent partial disability.* In case of disability partial in character but permanent in quality the compensation shall be sixty-six and two-thirds percentum of the average weekly wages and shall be paid to the employee for the period named in the schedule, as follows: * * * *Foot.* For the loss of a foot, two hundred and five weeks. *Loss of Use.* Permanent loss of the use of a * * * foot * * * shall be considered as the equivalent of the loss of such * * * foot. * * *."

The employer recognized a liability to claimant for a disability partial in character, and expressed willingness to continue to pay compensation therefor until reasonable opportunity was afforded to determine whether the use of claimant's foot would be lost. The claimant made no objection to such course provided he would not lose a right to secure compensation rightfully due him. The commission, however, proceeded with the hearing.

In my opinion, the commission failed to give due weight to the language of the statute "permanent in quality." The fact that claimant had sustained a compound fracture of the leg, between the ankle and the knee, does not create a presumption that he had lost the use of his foot. Section 21 of the Compensation Law relating to presumptions is not applicable to the present case. The burden of establishing a loss of the use of the foot in this case rested on the claimant, and in that respect his case failed as the record does not disclose any evidence to sustain the conclusion of the commission. On the contrary, the evidence tended to disclose that claimant had not sustained a loss of the use of his foot.

The employer's first notice of injury and the attending

physician's report in addition to stating the nature and extent of the injury contained the statement that the period from the date of the accident disability is likely to exist " is three months." The record recites that one of the commissioners " read medical reports " but such reports do not appear in the record.

Dr. Reiss, representing the insurance carrier, expressed the opinion that nine months was a little too early to determine as to the permanency of the loss of the use of the foot, that there was a little motion to the ankle, good motion to the toes, and in his opinion no injuries to the foot proper as the fracture was between the ankle and the knee. In his opinion there was no contusion or bruises of the bones of the foot. Dr Lewy, representing the commission, expressed his viewpoint of claimant's condition, as follows: " he has no joint, and entire outward and backward deformity — I think it is a permanent deformity equivalent to the loss of the use of the foot. It is useless for the purpose of a vocation either standing or walking if it is only a short distance." When asked by counsel for the carrier, " There are some occupations he can do? " Dr. Lewy replied, " If he can sit, he doesn't need to use his foot."

The record discloses that " claimant demonstrates ability to walk by walking to the end of the room and back again." The attempt was described by one of the commissioners in the following language: " In walking the left foot is brought to the ground some distance from the line of the right foot and claimant says he cannot bring his feet together without danger of losing balance. The distance between the two feet when brought to the ground is nine or ten inches or more than that: pretty nearly a foot."

At the time of the hearing before the commission, claimant resided at No. 2123 Caton avenue, Brooklyn. The meeting of the commission was held at No. 230

Fifth avenue, New York. To reach the office of the commission as appears by the statement of claimant, accompanied by his brother he boarded a trolley car directly near his residence, rode to Atlantic avenue, and then took the subway across to Manhattan, left the subway at Twenty-eighth street and Fourth avenue, walked from Twenty-eighth street to Fifth avenue and from Twenty-eighth to Twenty-seventh street to the office of the commission, demonstrating some use of his foot.

So far as the return discloses, neither one of the physicians present at the hearing made a thorough examination of the claimant to ascertain his physical condition. The claimant, though continuing treatment with a physician, did not call him as a witness to describe the condition of the injured member, his treatment of the same or to testify to the probable extent of the injury.

Claimant stated that he was unable to work at his business, painting, as he would be required to go up and down ladders and could not do so. One of the commissioners stated " that it is perfectly apparent, together with the medical testimony which is perfectly clear in this case as to the condition that exists." Another of the commissioners expressed his opinion, " I think within a reasonable time a man has a right to know what he is to expect, so that he may make his plans. A man must adjust himself to another change in his life."

The attention of the commissioners was called to our recent decisions in the *Grammici* and *Kanzar Cases* (219 N. Y. 322, 326), but the commission held that the decision cited did not control in the present case. I do not agree with the view expressed by the commission. In the *Grammici* case the claimant lost the first, second and third fingers and the first phalange of the fourth finger of his right hand. One physician deposed that

" the hand is useless in his vocation." As in the case at bar, claimant stated he could not work at his trade of painter by reason of his lack of ability to go up and down a ladder. In the *Grammici* case a second physician deposed " from vocation point of view, I consider this deformity equivalent to the loss of the use of a hand; " in substance the opinion expressed by Dr. Lewy in the present case. In the *Grammici* case Judge COLLIN, writing for this court, said: " The fact, if it existed, that the injuries barred the claimant from the employment or the particular occupation or vocation he was engaged in when he received them does not, in and of itself, tend to prove that the hand or the use of it was lost.. It is not within the letter or spirit of the law or the legislative intention that an injury to a limb or member of an employee incapacitating him for the particular employment should establish that he was incapacitated for employment permitting or involving the use of the limb or member as injured. It is a matter of common observation and knowledge that a hand, arm, foot or leg incompetent, through injury, for certain employments is competent and useful for other employments. The expressions, ' loss ' and ' loss of the use,' as used in the law, should be given their unrestricted and ordinary meaning. In the case at bar, the hand, or the use of it, was not lost, provided it could fulfill, in a degree fair and worth considering, in any employment for which the claimant was physically and mentally fitted or adaptive, its normal and natural functions. In case the hand was destroyed by amputation, directly or indirectly caused by the injuries, to such an extent that it could not thus fulfill its natural functions, it was, within the purview of the law, lost. (*Sneck* v. *Travelers Ins. Co.*, 88 Hun, 94; affd., on opinion below, 156 N. Y. 669.) While the loss of a hand necessarily involves the loss of the use of it, the loss of the use of a hand does not involve the actual

loss of the hand as a physical member — a distinction the law recognizes and observes." (p. 324.)

The *Kanzar* case was argued with the *Grammici* case and decided upon the rule stated in the opinion in that case.

In *Boscarino* v. *Carfagno & Dragonette* (220 N. Y. 323) the claimant sustained an injury to his eye, and the industrial commission found that the injury resulted in iritis, and eventually in the loss of eighty per cent of the vision of that eye and the consequent loss of use of the right eye, which award was affirmed by the Appellate Division. This court, however, reversed the order of the Appellate Division and remitted the case to the industrial commission, following the principle laid down in the *Grammici* case, and held that if in the future the impairment of the claimant's vision would increase the industrial commission was empowered to reconsider the award made.

Applying the principle of the cases to which attention has been called to the case at bar, I conclude that they are controlling in the present case, and I recommend that the order appealed from and determination of State Industrial Commission be reversed and that the claim be remitted to the industrial commission for further consideration.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK, CARDOZO and McLAUGHLIN, JJ., concur.

Order reversed, etc.