No. 9709.

GLOBE INDEMNITY COMPANY ET AL. *v.* INDUSTRIAL COMMISSION ET AL.

INDUSTRIAL COMMISSION—*Determination of Degree of Disability.* In determining the degree of disability of an injured workman, and whether the degree thereof is to be determined by his general impairment of earning capacity, without reference to any particular class of labor, or by his impairment of capacity in the kind of labor at which he was employed at the time of his injury, the widest possible discretion is vested in the commission, to determine whether the inquiry shall be directed to either of the questions above suggested, or to a combination of both. The finding of, the commission, supported by sufficient evidence, will not be disturbed.

*En banc.*

*Error to Denver District Court, Hon. Frances E. Bouck, Judge.*

Mr. D. L. WEBB, for plaintiffs in error.

Hon. VICTOR E. KEYES, Attorney General, Mr. JOHN S. FINE, Assistant, and Mr. H. E. CURRAN, for defendants in error.

Burke, J.

MATT KAMBY, defendant in error, (hereinafter designated as "Claimant") was employed by plaintiff in error, The Colorado Mining and Development Company, in its mining operations, and plaintiff in error, The Globe Indemnity Company, was the insurer of the mining company. All were subject to the provisions of the Workmen's Compensation Act, chap. 179, Laws of 1915, p. 515. Claimant was injured on the 14th day of October, 1916, by a falling timber, which broke his left leg about two inches above the knee. The sole question for the determination of the commission was the extent and degree of claimant's disability. On this subject there was received in evidence, by agreement, the written report of Dr. Buchtel, whose conclusion is that "temporary disability should be for ten months. Permanent disability five per cent." Also the

written report of Dr. Stuver, whose conclusion is, "Considering this man's occupation I believe that his permanent partial disability is not less than from fifteen to twenty per cent." Also the written report of Dr. Hegner, which states, "In my opinion this man's disability is such that he cannot resume his work as a miner. I would make a conservative estimate of seventy per cent total permanent disability for the present with every prospect of this increasing." In addition there was the oral testimony of Dr. Hegner who stated that his estimate of seventy per cent disability was intended to mean disability as a miner, and it was confined solely to the injured leg, and not intended to apply to the entire body as affected by the injury in question. "The man's usefulness outside of this depends upon not only his physical condition but his mentality." * * * * "It depends upon his mentality, and his will and his occupation." * * * "If he had the mentality he could earn more than he did as a miner—but I would not put it at fifteen or twenty per cent."

Q.—"Probably not as much as that?"

A.—"Certainly that is plenty."

It further appeared that claimant was born in Austria; was a naturalized citizen of the United States; had been in this country twenty-eight years; during practically all of which time he had been engaged in mining. The commission found "that the claimant has sustained seventy per cent loss of the use of the left leg," and made its award accordingly. From a judgment of the District Court affirming such award plaintiffs in error prosecute this writ.

Mr. Justice Burke delivered the opinion of the court:

Plaintiffs in error contend that the commission and the court misconstrued the meaning of the phrase "impairment of earning capacity," erroneously limiting it to the particular occupation in which claimant was employed when injured; that whereas the evidence shows that claimant may have sustained a seventy per cent "impairment of earning capacity" as a miner it conclusively appears that his general "impairment of earning capacity" did not ex-

ceed twenty per cent; hence the finding and award of the commission are unsupported by any evidence.

It appears that the rule contended for by plaintiffs in error for determining the "impairment of earning capacity of claimant," and which we will designate as Rule No. 1, is "The degree of disability is to be determined by the claimant's general impairment of earning capacity without respect to any particular kind of labor," to support which the following, among other authorities, are cited.

*Grammici v. Zinn,* 219 N. Y. 322, 114 N. E. 397; *Boscarino, et al. v. C. & D. Inc.,* 220 N. Y. 323, 115 N. E. 710, Ann. Cas. 1918A 530; *Modra v. Little,* 223 N. Y. 452, 119 N. E. 853, Ann. Cas. 1918D 177.

Whereas the rule contended for by defendants in error, and which we will designate as Rule No. 2, is "The degree of disability is to be determined by the claimant's impairment of earning capacity as it relates to the kind of labor at which he was employed when injured," to support which the following, among other authorities, are cited.

*Duprey v. Md. Cas. Co.,* 219 Mass. 189, 106 N. E. 686; *Gillen v. O. A. & G. Corp,* 215 Mass. 96, 102 N. E. 346, L. R. A. 1916A 371.

Both these contentions may be wrong, as a simple illustration will demonstrate.

An expert engraver, past middle life, engaged for years in that business, commanding high wages thereat, and having no other special skill, and no other regular occupation, is temporarily employed at very low wages carrying brick and mortar in a wheelbarrow in building construction. While so employed he sustains an injury to his right hand, trivial in its effect to incapacitate him from general work, but making it wholly impossible for him ever again to secure employment as an engraver. Both the language and spirit of the Act would be violated in his case by the application of Rule No. 1.

The same man, under the same circumstances, engaged in the same occupation, sustains an injury to his foot of such a character as to permanently incapacitate him from

running a wheelbarrow, but having no effect whatever upon his earning capacity as an engraver. Both the language and spirit of the Act would be violated in his case by the application of Rule No. 2.

We are of the opinion that the widest possible discretion is vested in the commission to determine whether, under a given set of circumstances and a particular state of the evidence, the first or second rule, or a combination of both, should be applied. Age, education, training, general physical and mental capacity, and adaptability, may, and often should, be taken into consideration in arriving at a just conclusion as to the percentage of impairment of earning capacity.

The claimant in the instant case testified before the commission. They were thus enabled to make an application of these tests which is impossible to us. It will be observed that Dr. Hegner in his testimony gave due weight to these considerations, and that Dr. Stuver did not claim to do more than fix a minimum per cent of impairment of earning capacity. There is sufficient in the record, as it comes before us, to demonstrate that the commission was justified in finding, and may have found, that as to claimant's ability to change his occupation, or perform general physical labor, he was a much older man than his years would indicate; that he was a person of low mentality and scant adaptability; that a seventy per cent impairment of his earning capacity as a miner, which might have been nothing more than a five per cent impairment of the general earning capacity of many men, was in fact, by reason of his special limitations, a seventy per cent impairment of his general earning capacity. It thus appears that the alleged error in the instant case goes solely to a finding of fact made by the commission upon conflicting evidence. That this court will not disturb such a finding so made is too well settled to admit of further discussion.

*Passini v. Industrial Comm.*, 64 Colo. 349, 171 Pac. 369; *Industrial Comm. v. Johnson*, 64 Colo. 461, 172 Pac. 422.

The judgment is therefore *affirmed*.