MIJAT v. INDUSTRIAL COMMISSION et al.

No. 5638. Decided May 9, 1935. (44 P. [2d] 705.)

*Harry G. Metos,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *A. R. Barnes,* of Salt Lake City, for defendants.

MOFFAT, Justice.

This is a proceeding to review a single question determined by the Industrial Commission. The applicant, Sam Mijat, claims to be permanently and totally disabled, and therefore entitled to compensation for life as a result of the claimed permanent total disability. All jurisdictional facts were admitted. The accident, its nature and extent, and the resulting injury are also admitted. The Standard Coal Company assumed liability and paid compensation continuously from the date of the accidental injury to the time of the hearing. The applicant was injured October 5, 1930, while employed by the Standard Coal Company in a coal mine of that company at Standardville, Carbon county, Utah. He is of Austrian nationality and 42 years of age.

The injuries consisted of a compound multiple fracture of the lower end of the tibia and fibula; a fracture of the left internal malleolus (ankle bone), laceration of the soft tistues and a fracture of the neck of the left femur. The accident and injury resulted from roof rock falling upon applicant. He was taken to the Holy Cross Hospital at Salt Lake City on October 8, 1930, and remained there until the 15th day of February, 1931. The fractures failed to heal, and he was again taken to the hospital on the 25th day of April following. X-ray pictures showed there was no union of the hip and the trochanter had slipped up above the neck of the femur about one and a half inches. The fracture of the lower end of the tibia and fibula seemed to have healed, but were

out of position. An operation was performed on the left hip, consisting of a setting and bone grafting, which was successful. He was discharged from the hospital on the 19th of June, 1932. Being a heavy man, it was not easy for him to get around on crutches.

On the 5th day of August, 1932, the Industrial Commission held a hearing with a medical advisory committee to determine whether or not the applicant should be given further surgical treatment. At this hearing it was disclosed that the fracture in the lower third of the left leg was infected. The applicant's left leg had become about two and one-half inches shorter than the right leg. Applicant was transferred to the hospital at Standardville on August 16, 1932. There an operation was performed on the lower portion of his left leg. He was confined in the Standardville hospital till the 12th day of December, 1933. His leg did not heal. He was then returned to Salt Lake City, where his leg was given massage treatment.

On May 25, 1934, a hearing was held with the Industrial Commission and a medical advisory committee to determine the extent of applicant's disability. At this hearing it was shown that applicant had a bony union of the femur fracture, but there was extensive calcification in the region of the fracture at the head of the femur which would interfere to some extent with the motion of the joint. That the upper femur bone graft was undergoing decalcification, and that there was a possibility of the osteomyelitis of the lower left leg reappearing. Applicant returned to Standardville and remained there under observation until the 11th day of September, 1934, when he returned to Salt Lake City. On this day a hearing was held before the Industrial Commission to determine whether at that time the applicant was permanently and totally disabled.

The Commission found the facts relating to employment, wages, admitted liability for the injury; the course of treatment; that the applicant was a man weighing about 240 pounds; that there was a shortening of the left leg due to the

injury; that he had an osteomyelitis where the tibia and fibula had been injured, which was inactive at the time of the hearing, but which might become active at any time; that he is fearful of putting his weight on his disabled leg, and uses two crutches to move about. The Commission further found:

"The applicant is not permanently and totally disabled. The disability to the left leg is as great, but no greater, than if said left lower extremity were disarticulated at the hip joint. There are no other members involved."

The Commission awarded applicant compensation in addition to what had been paid in the sum of $16 per week to continue to the end of the six-year period, which ends on September 29, 1936, the maximum allowance under the statute.

The loss of a leg under the terms of the Workmen's Compensation Act is not a permanent total disability, nor does such loss alone sweep away one's entire earning capacity. The statute specifically provides the amount of compensation for loss of a limb. The testimony reveals without contradiction that applicant is not disabled by the injury complained of to the extent that a total loss of the injured limb would impose.

The evidence supports the finding of the Commission that the applicant is not totally and permanently disabled within the rule announced in the cases of Spring Canyon Coal Co. v. Industrial Commission, 74 Utah 103, 277 P. 206, and Utah Fuel Co. v. Industrial Commission, 76 Utah 141, 287 P. 931. In the case of Spring Canyon Coal Co. v. Industrial Commission, supra, the disabling condition affected both lower limbs, and the disability was greater than that of the one limb involved in the instant case.

The award is affirmed.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and WOLFE, JJ., concur.