Eckley *v.* Rae, Appellant.

Argued September 28, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*E. C. Marianelli,* for appellants.

*J. Gordon Mason,* for appellee.

OPINION BY BALDRIGE, J., October 27, 1937:

The claimant in this workmen's compensation case was a steel worker. On July 24, 1929, while engaged in the construction of a bridge, he fell from the scaffold to the ground, about 25 feet below, sustaining severe injuries to the lower portion of his body. Shortly thereafter, an agreement was executed, under which compensation was paid for total disability at the rate of $15 per week, until September 8, 1932, when a supplemental agreement was entered into, which recited that the claimant was no longer totally disabled. It provided for compensation thereafter at the rate of $14 per week, and payments were made accordingly to claimant until July 17, 1933, when the employer filed a petition to terminate. This application was refused by the referee who found on January 29, 1934, that the claimant was partially disabled and was entitled to compensation for the remainder of the 300-week period. His action was sustained by the board.

On March 5, 1935, a few weeks prior to the expiration of the 300-week period, the claimant filed a petition to modify the award, alleging permanent total disability. After hearing, the referee found that the claimant suffers a total industrial loss of earning power and is unfit physically to perform any work as the result of his accident. The board, in affirming the referee, with some modification, stated: "At the time claimant presented his petition he suffered between a 75% and 85% disability in his left leg; a 50% disability in his right leg; and a tilting of the pelvis toward the left with compensatory curve of the spinal column......All this disability so affected the physical structure of claimant's body that in the labor market he is unfitted to do even light work of a general character, and within the meaning of the Workmen's Compensation Act he is totally disabled." An award for permanent total disability was made, subject to the provisions of section

413 of the Workmen's Compensation Act, as amended April 13, 1927, P. L. 186, §6 (77 PS §771).

The appellant concedes that the claimant has a permanent partial disability and that he is unable to do the work in which he was previously engaged, but claims that there was no evidence to support the finding that he is entirely unfit physically to perform work in any line of endeavor.

Dr. Griffith was called as a witness by the appellant at the hearing held by the referee under his petition to terminate the agreement, and testified that when he first saw the claimant, about November 1, 1929, he found that he had a dislocated scaphoid bone in the right foot and a comminuted fracture of the left tibia and left fibula; that he had a subsequent reconstruction operation on the left ankle and a further operation later for the improvement of the left leg; that, as a result, the right leg had recovered satisfactorily and the scars on the left leg and foot had healed fairly well, but there was a slight ulceration at the top of the inside scar, which was responding satisfactorily to light treatment, that the operations left claimant a ¾-inch shortening of the left leg. This witness expressed the opinion that claimant did not have more than 10 per cent permanent total disability at that time and he knew of nothing to prevent his working as a laborer about the mines.

Dr. Croop, at the same hearing, described claimant's physical condition and stated that, in his judgment, claimant has not practical disability in his right leg, but shows some slight disability in his left leg, and that he could do ordinary labor which does not necessarily require him to be agile.

Dr. Rogers, a roentgenologist, also testified that "there is evidence of old comminuted fracture of the scaphoid bone of the right foot with approximately a third of the bone wedge shaped remaining following

operative procedure. The anterior surface of the astragalus is distinctly roughened and the articular spaces of the tarsal bone hazy and indistinct though not completely fused."

At the hearing in September, 1935, on the petition of the claimant alleging permanent total disability, Dr. Griffith, then called as a witness by the claimant, testified that at that time there was a bluish discoloration on the surface of the claimant's left leg, where incisions had been made, and an open sore with a watery discharge, which condition had been present for about 18 months without material change. This indicated a new condition of the leg, or at least a more serious one than existed at the first hearing. He expressed the opinion that the claimant was permanently partially disabled, explaining that he meant thereby that he could do only light labor, never laborious work, and would be unable to do any kind of employment that compelled him to stand.

Dr. Croop, called by the defendant at this hearing, testified that on March 28, 1935, the claimant came to his office, walking on crutches with a limp in his left leg, and complaining of pain on exertion; that upon examination he found "a tilting of the pelvis toward the left with compensatory curve of the spinal column." Nothing was said at the hearing in 1933 of this condition. He observed, also, that there was a sore about 7 inches long on the left lower leg, the ankle was swollen, and motion was restricted in all directions. He stated that the claimant could be a watchman, elevator operator, gardener, or do work of that type, but that "those jobs are not available, and I don't think it means much."

Both of these physicians at the last hearing fixed the percentage of claimant's disability at 75 to 85 per cent in the left foot and 50 per cent in the right foot. It is evident from their testimony that the bones in claimant's right foot did not fuse, as predicted by Dr. Griffith in 1933. As this healing process had failed, the claimant

continued to be subject, through friction, to considerable pain. He testified in 1935, that he suffered recurrent pain in his right foot and continuous pain in his left, that he was unable to do any work that required him to be on his feet or to obtain employment. The only way he got relief was by sitting down and elevating his feet. The claimant had a very limited education, stopping school at 14 years of age when he had finished the third grade, and, with the exception of a few years thereafter when he did general labor work, his employment had been that of a structural steel worker. The testimony indicates that, mentally, he is not qualified to do any work except as a laborer and his physical disability prohibits that form of employment, except to a very limited degree.

In the light of this testimony, we cannot declare as a matter of law that the claimant failed to carry the burden of showing that he is physically unable to work as a result of the accident. While there was some evidence that no change had occurred in his condition since the first hearing, we think that with all the evidence taken into consideration the board was justified in concluding that claimant's permanent disability had increased, bringing him within section 413 of the Workmen's Compensation Act, supra, and that he has become a nondescript in the labor market.

This case is different in its fact from *Yednock v. Hazle Brook Coal Co.*, 109 Pa. Superior Ct. 182, 167 A. 236, as, there, the claimant testified that he was capable of doing light work. He had rejected four different jobs offered by his former employer. Eckley tried to get work. He applied for the job of watchman but was refused employment by his former employer because of his physical condition. Doubtlessly, he is capable of doing only a type of work particularly selected for him, and it well may be that he could not continue at any sort of work very long. With his physical handicap, he cannot go into the open labor market and obtain

582

employment, and for all practical intents and purposes he is totally disabled.

This case comes under our decisions in *Consona v. Coulborn & Co. et al.*, 104 Pa. Superior Ct. 170, 158 A. 300; *Jones v. Hazle Brook Coal Co.*, 119 Pa. Superior Ct. 409, 179 A. 783; *Hale v. Susquehanna Collieries Co.*, 126 Pa. Superior Ct. 342, 191 A. 225, wherein we held that when one is a nondescript in the labor market, an award for permanent total disability is justified. We said in the Consona Case (p. 172) : "It is a matter of common knowledge that there is a general disinclination on the part of employers to give work to cripples. If suitable work was available to this man with his limitations, it was incumbent upon the appellant to show that fact."

Judgment is affirmed.