## RADE KRNETICH v. OLIVER IRON MINING COMPANY.[1]

February 11, 1938.

No. 31,033.

*Austin & Wangensteen,* for relator.

*Dennis F. Donovan,* for respondent.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission.

There is not much dispute as to the facts. Relator, while employed by respondent, November 5, 1927, fractured both bones in his right leg some little distance below the knee when a heavy door of an ore car fell upon him. Respondent recognized liability under the workmen's compensation act, and on April 24, 1928, entered into an agreement with relator under which he has been paid $20 per week for 300 weeks, besides being furnished hospitalization and medical attention during and beyond that period. After making such payment, respondent gave notice that it would pay no more. Thereupon relator presented an application to the commission for compensation for total permanent disability. A hearing before a referee resulted in a denial, and on appeal to the industrial commission the decision went against relator. The controlling findings are V, VI, and VII reading:

[1]Reported in 277 N. W. 525.

"V. That as a result of said injury the employe was disabled for a healing period in excess of 25 weeks.

"VI. That as a further result of said injury the employe sustained a permanent disability consisting in a total loss of use of his right leg.

"VII. That the employe is not totally and permanently disabled as a result of said injury; that as a result of said injury he is not able to engage in sustained hard manual labor; and that he is capable of sustained labor in several kinds of light work."

It appears that no injury resulted from the accident except the fracture of the tibia and fibula in the upper third portion. The knee joint was not affected. It was a comminuted fracture, and in healing there was a one and three-quarter inch shortening of the leg. The circulation below the knee is affected, and there is some swelling or enlargement of the calf of the right leg as compared with that of the left. It is a serviceable leg, except that relator says he cannot keep on his feet more than an hour at a time without resting. He has some infection in the bone which periodically breaks out. He is now 50 years of age, and from weighing 215 pounds in 1927 when injured he has increased to 235 pounds. For several months after the leg healed he acted as switch tender, and when so doing he walked half a mile to and from his work. The doctors are in agreement that he is unable to perform sustained manual labor which requires him to be on his feet. But such work as flagman, watchman, cobbler, gardner, elevator operator, or skip tender, where he could sit occasionally, and other light work, they think he can do. The two doctors, who were of mature experience in the profession, are of the opinion that he is in better condition than if there were an amputation of the leg so far as disability is concerned. The attorneys saw fit to file a stipulation after the *certiorari* issued, to the effect that although conditions of employment generally have improved and returned to normal on the Iron Range, where the employe was employed previously and where he resided, he has not been able to obtain employment of a nature that he is able to do, although he has exercised diligence in his endeavor

to obtain such light work from respondent and other employers. The "foregoing may be considered as part of the record of this case in all respects as if the same was incorporated therein prior to and for the purposes of the proceedings herein."

The stipulation and particularly the force attempted to be given thereto is out of the ordinary. The fact-finding body is the commission and not this court. But we may consider that the stipulation reflects the testimony given by relator that he has been unable to obtain light work, the only work he is capable of performing. However, we cannot hold that because a workman in an industrial accident has lost a member of his body or lost the use of a member, and thereby incurred a permanent partial disability, the commission must necessarily find permanent total disability because he has diligently sought such work as he is capable of doing without finding it. The crippled condition of any person seeking work is unquestionably a handicap, and because thereof the compensation is awarded under the act for partial permanent disability. Some men even when crippled from the loss of a member have a personality that appeals to employers, and because thereof are successful in obtaining work where other able-bodied men lacking personality fail. The workmen's compensation act was not intended to make any distinction between accidentally injured employes based on differences of that sort. Nor can the industrial commission be governed in determining whether a disability arising from an accidental injury to an employe is permanent total or permanent partial disability because the depression or some other condition of industry affects the labor market, so that the one injured with due diligence can or cannot find employment. The act entitles the injured employe to compensation, but places no duty on the employer to retain the employe in the service or to secure employment for him.

Our workmen's compensation act is to be construed so as to accomplish its beneficent purpose. State ex rel. Casualty Co. v. District Court, 133 Minn. 439, 158 N. W. 700. In the case at bar relator claims permanent total disability. This is largely a question of fact. The statute, 1 Mason Minn. St. 1927, § 4274, provides

(a) for temporary total disability; (b) temporary partial disability; and (c) for permanent partial disability, resulting from an accidental injury, with 44 subdivisions; (d) for permanent total disability as defined in (e) ; and (f) for death resulting from the injury. It is clear that the commission here found permanent partial disability, because of the loss of the use of the right leg, under subd. 40 of (c), reading: "In all cases of permanent partial disability it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member; but the compensation in and by said schedule provided, shall be in lieu of all other compensation in such cases, except as otherwise provided by this section." The otherwise provided instance is to be found in (e), reading: "The total and permanent loss of the sight of both eyes or the loss of both arms at the shoulder, or the loss of both legs so close to the hips that no effective artificial members can be used, or complete and permanent paralysis, or total and permanent loss of mental faculties, or any other injury which totally incapacitates the employe from working at an occupation which brings him an income, shall constitute total disability." The words "or any other injury which totally incapacitates" must be considered as implying an incapacity similar in kind to that produced by the injuries enumerated in (e). When the commission found that relator had lost the use of his right leg, it was perhaps as favorable a finding to him as the evidence warranted. He had the use of his legs although the right was shortened one and three-quarter inches and was weakened. It bothered him occasionally when a sinus developed. But he worked four or five months tending a switch in the yard. He did some walking at that job. He walked about half a mile to and from his work. He could attend a skip in a mine, he could operate elevators in a building where he would not be required to stand continuously, he could serve as a flagman, a watchman, a gardener, or in any light work where he would not have to be on his feet all the time. In view of this ability, the commission's finding "that the employe is not totally and permanently disabled" cannot be held unsupported.

Relator claims that permanent total disability should be the same thing in workmen's compensation cases as in health insurance cases, and cites Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737, and cases therein referred to. While construction of insurance contracts relating to total permanent disability may be helpful in workmen's compensation cases, in the latter regard must be had to the entire scheme of compensation. From what has already been said, the provisions in the workmen's compensation act must be construed so as to create no unjust or unequal results if it can be avoided. It is readily seen that an accidental injury may not only deprive an employe of a member of his body, but produce other injuries which permanently and totally incapacitate him from earning a living. Such a case is Simpson v. New Jersey Stone and Tile Co. 93 N. J. L. 250, 107 A. 36, referred to by this court in Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215. The Lund case, in certain aspects of the facts, approaches the case at bar. But the condition of Lund was a great deal more aggravated than that of relator here. The finding there affirmed was that the temporary total disability had not ended. The finding here is that there is no permanent total disability, but a permanent partial disability in the loss of the use of the right leg. A temporary total disability was also the finding involved in State ex rel. Albert Lea Packing Co. v. District Court, 146 Minn. 283, 178 N. W. 594. It is not thought necessary to discuss the many decisions cited by relator, for in many thereof the applicable statutes are not like our own, and in others the disability or incapacity involved was the temporary total disability which usually follows accidental injuries and are compensable under § 4274(a). It is clear from the findings of the commission that such findings determine the permanent condition in which relator found himself after the temporary total disability ceased.

Relator, in addition to the Lund and Albert Lea Packing Co. cases, *supra,* contends that the following from other jurisdictions justify a finding of permanent total disability from the loss of the use of a leg. American Employers Ins. Co. v. Haygood, 48 Ga. App. 663, 173 S. E. 377; Yarbrough v. Great American Ind. Co.

(La. App.) 159 So. 438; White Oak Refining Co. v. Whitehead, 164 Okl. 57, 22 P. (2d) 910; United States Fidelity & Guaranty Co. v. Brandon (Tex. Civ. App.) 31 S. W. (2d) 846; Knobbe v. Industrial Comm. 208 Wis. 185, 242 N. W. 501, and other cases therein noted. In the Georgia case the fact was that the injury to the employe's leg might be removed by amputation, but on account of age and diabetic condition the operation was too dangerous, and a finding that the injury had produced a complete loss of function of the left leg and was attended by general bodily symptoms, and that the accident was an active factor in producing total incapacity was sustained. We think Travelers Ins. Co. v. Hurt, 176 Ga. 153, 167 S. E. 175, 176, is more in point, where one of the questions certified by the court of appeals was thus answered by the supreme court: " 'Total disability is the antithesis of partial disability.' * * * The nature and extent of the disability resulting from the injury received determine under which one of these two sections the employe shall be compensated, *and the determination of that question is not dependent upon his ability to find employment.*" (Italics supplied.) In the Louisiana case there was a fracture of the femur near the femoral neck and a tearing of the tendons. In the healing process a bony protuberance was formed which interfered with the tendons, resulting in permanent total disability as found. The evidence indicates that an operation would have restored ability, but it was not ordered in view of the employe's objection. There is language in the Louisiana cases that supports relator's theory that inability to procure the work the employe has capacity to perform is a determining factor of permanent total disability. The Oklahoma case cited is of no particular aid to relator. The Texas case merely sustains findings of permanent total disability. A more helpful decision is Fitzgerald v. Southern Surety Co. (Tex. Civ. App.) 75 S. W. (2d) 298, where a paragraph of the syllabus is: "Where compensation act provided for compensation for injury to leg requiring amputation below knee as for specific injury, inability of employe suffering such injury to perform work of oil well driller in which he was previously engaged did not permit recovery for permanent total disability." The Wisconsin decision does not de-

termine anything other than that temporary total disability had not terminated; hence the case was not ripe for a determination of whether permanent total or permanent partial disability resulted from the injury.

Relator also cites Caillet v. Industrial Comm. 90 Utah, 8, 58 P. (2d) 760, in answer to Mijat v. Industrial Comm. 86 Utah, 371, 44 P. (2d) 705, referred to by respondent. It is enough to state that in the former case there was a finding that the employe was permanently and totally disabled and that the dissenting opinion of Mr. Justice Wolfe is quite persuasive. The Mijat case showed more severe injuries than relator's, still the commission's finding that the employe was not totally and permanently disabled was sustained.

There are statements in 1 Honnold, Workmen's Compensation, p. 599, and 2 Schneider, Workmen's Compensation (2 ed.) § 418, that inability to find work is indicative of permanent as well as of temporary total disability. Even granting that the cases referred to in the textbooks mentioned can be construed to so hold, the bearing of testimony that an accidentally injured employe after diligent effort has been unable to secure work is for the commission upon the issues of total permanent, or partial permanent, or temporary total disability. We think the commission's findings in the case at bar are sustained, and that the evidence, even giving force to the stipulation, does not compel a finding of permanent total disability.

The decision is sustained and the writ discharged.