Babcock *v.* Babcock & Wilcox Co. et al.,
Appellants.

Argued September 27, 1939.

Before KELLER, P. J., CUNNINGHAM,
BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Charles E. Kenworthey,* with him *Paul Maloney,* for appellants.

*Milford J. Meyer,* for appellee.

OPINION BY PARKER, J., November 22, 1939:

The claimant in this workmen's compensation case met with an accident, on April 10, 1936, in the course of his employment and the employer entered into an open agreement with him for total disability. On October 1, 1937, the employer petitioned for a modification of the agreement, alleging that claimant was only partially disabled. The referee held that he was entitled only to partial disability after September 30, 1937. Claimant did not appeal from that decision but petitioned the board for a rehearing, which was granted, and the referee arrived at the same result. On appeal the board reversed the referee and granted compensation for total disability and this action of the board was affirmed by a court of common pleas, each holding that the claimant as a result of the accident was a "nondescript" in the labor market.

That this claimant is entitled to compensation is not open to argument. In fact, it is conceded. It is therefore necessary to decide as to the character and amount of compensation to which he is entitled under the record. The questions here involved are more particularly, first, whether the evidence will support the finding of the board that he should receive total compensation and then, if he is not so entitled, how he is to be compensated under the statute. The employer now claims that claimant should be compensated under section 306(c) of the Workmen's Compensation Law for the permanent industrial loss of the use of a member of his body. We all agree with the conclusion of the referee that the evidence will only support a finding of partial disability.

To support its position the employer called its district director who testified that he had interviewed

claimant and offered him employment, and a physician who examined and treated the claimant at various times between July 20, 1936, and September 10, 1937. The claimant took the stand on his own behalf. No other witnesses were called and upon this testimony alone the outcome depends.

The claimant, an iron worker, accustomed to hard labor, and with little education, suffered fractures of the right femur and right oscalcis and as a result was totally disabled for a time. He testified that he was 41 years of age, that he had reached the seventh grade in school and had received no further education, suggesting that he could not fill a clerical position that required the use of figures and making of computations. Dr. Orr testified that on July 20, 1936, he first examined the claimant who was then getting around with difficulty with the aid of crutches and had considerable pain at the site of the fracture. The injuries were confined to the leg and foot and there was no evidence of any injury to any other part of the body. The physician saw the claimant again on September 8, 1936, and found him much improved but continued to treat him from time to time until March 8, 1937, when the patient could fully flex the hip and knee and had good muscle tone, and the union of the fracture of the femur was solid. There was, however, still complaint as to the condition of the foot and the doctor continued to treat that member. He last saw the claimant on September 10, 1937, when the patient was examined by him and it was found that the injury to the femur had been repaired but there was a shortening of the leg of one-half to three-quarters of an inch and the leg bowed slightly at the point of fracture. At that time the disability of the patient was largely, if not entirely, confined to the conditions resulting from the injury to the foot. The doctor testified with reference to claimant's ability to perform labor that he could do light work but could not follow his former employment if

that required climbing, long hours on his feet, or walking on uneven ground, stating as follows: "The thing that he can't do would be to stand on his feet all day long at a machine. If there was work that he could do where he had occasion to sit down once in a while that he can do. Prolonged standing, prolonged walking or hazardous climbing, is the type he can't do."

W. C. Abel, district director for the employer testified that he offered the claimant work either as a timekeeper or tool keeper and that the employment was declined. This was in effect admitted by the claimant who stated with reference thereto that he did not have the training to fill the job of timekeeper but that he had promised to come back and talk over with Mr. Abel employment as a tool keeper. It is impossible to read the testimony of the claimant himself without arriving at the conclusion that the testimony of the doctor as to the ability of the claimant to do light work was not contradicted and that the claimant himself believed that he could do light work if such work was available. He stated that he made some effort to secure employment. The position of the claimant and his attitude is exhibited by the following questions and answers: "Q. Isn't what is in your mind the fact that you might get a job for a little while and take you off compensation and then you would get fired and wouldn't have anything? A. Yes sir. Q. If it wasn't for that you might take one of those tool jobs if you could be sure you weren't going to get thrown out after a short period of time? A. Yes." The referee awarded the claimant compensation for partial disability to the extent of sixty per cent.

The claimant did not appeal from that decision but presented a petition for a rehearing which was granted and he again took the stand. At the second hearing, held in January, 1938, the claimant testified that in December, 1937, and January, 1938, he asked Mr. Abel

for a tool room job but there was not a job available at those times. He also testified that he sought employment from a number of firms who employed iron workers. His testimony with relation to the sort of employment he sought was, to say the least, unsatisfactory. He stated that he asked for a job in his line of work and also asked for a job in a tool room from certain firms. There were no openings with any of these firms at that time. After hearing this evidence the referee again awarded compensation for partial disability.

It is not now claimed by the employee that he is not able to do some light work and the evidence requires that concession, but he insists that while he can do light work his capacity for work is so limited as a result of the accident that he is entitled to be classified as a "nondescript" in the labor market as that term is used in the case of *Consona v. R. E. Coulborn & Co.*, 104 Pa. Superior Ct. 170, 158 A. 300, and kindred cases of ours following it. Such a classification had been recognized in other jurisdictions, including England where such injured employees are referred to as "odd lots" in the labor market. We shall, therefore, confine our attention to ascertaining whether under the evidence this injured employee is entitled to be so treated. In the Consona case we quoted with approval this excerpt from a note in 33 A. L. R., p. 122, which will bear repeating: "If the workman is proved able to do light work in general, it may be presumed that such work is available; but if the injury has left the workman a 'nondescript' in the labor market, unfitted to do even light work of a general character, but fitted to do 'odd' jobs not generally obtainable, it may be presumed that there is no work available for him, even though he attempted to find such. It may be said then, as to the latter situation, that the courts have proceeded upon some such theory as this,—if the workman is left a nondescript, prima facie he is unable to obtain suitable employment, and so long as this presumption re-

mains not overturned the workman is entitled to compensation as for total incapacity."

In support of its position the board relied on the Consona case, *Jones v. Hazle Brook Coal Co.,* 119 Pa. Superior Ct. 409, 179 A. 783; *Hale v. Susquehanna Collieries Co.,* 126 Pa. Superior Ct. 342, 191 A. 225; *Eckley v. Rae,* 128 Pa. Superior Ct. 577, 194 A. 575; *Maishock v. State Workmen's Ins. Fund,* 129 Pa. Superior Ct. 118, 195 A. 143. The board, in substance, held that claimant "can't do the work he can get, and can't get the work he can do" and "it [therefore] is the duty of the defendant to make available the work claimant can do." In our opinion the evidence will not support the basic findings of the board and the law has been misapplied.

We may not assume as a general rule that a man is totally disabled even though he has suffered an accident, his earning power has been lessened, and he has been unable to secure employment. It is the purpose of this act to compensate an injured employee for loss of earning power due to an accident but it is not intended to cover losses arising from fluctuations in the labor market. "The [this] compensation act is not designed to afford insurance against unemployment, and the fact that work is not procurable does not prove that a man is not capable of performing it": *Yednock v. Hazle Brook Coal Co.,* 109 Pa. Superior Ct. 182, 185, 167 A. 236. Provision is now made by other legislation for losses due to unemployment. Our statute recognizes the fact that there may be a loss of earning power due to an accident that is not total and so provides for total and partial disability. The decisions have but given a practical application to the statute and recognized its primary purpose when they have declared that there is a class of injured employees of limited education who may be able to move about and even perform some slight labor, yet are incapacitated to such an extent that they are unfitted to do light work of

a general character and as a result are for all practical purposes excluded from the labor market. Even such persons occasionally find employment, but the employment is due rather to the charitable instincts of the employer than to the capacity of the employee for labor. He is well described as a "nondescript" or "odd lot" in the labor market. It does not follow that because the available field of labor has been reduced or restricted by a loss of earning power he has been excluded from the labor market.

In the Consona case and in the cases that followed it, we have adhered to the statement in that case that if the workman is proved able to do light work *in general* it may be presumed that such work is available. If the workman is, as a result of the accident, unable to do even light work of a general character, but is only fitted to do "odd" jobs, not generally obtainable, we but recognize common experience when we assume that such work is not obtainable and cast the burden on the employer to show that work is available which the workman is able to do: *Jones v. Hazle Brook Coal Co.,* supra, p. 411.

The distinction is fundamental between those who are able to do light work in general and those who are so limited in capacity that they are only fitted to perform special service, a class of work not generally available. In the Consona case the claimant was limited in the motion of his head, neck and right arm, which he was not able to raise. He tried to do light work and had to abandon it on account of dizziness. He could only do light work "of a very limited character", at irregular intervals. He could not hold a job and he was advised by his physician that he should remain quiet. His injuries had not cleared up after six or seven years. This is a typical case of a "nondescript" in the labor market as we understand it. Similar cases are those of *Jones v. Hazle Brook Coal Co.,* supra, and *Hale v. Susquehanna Collieries Co.,*

supra. In the Jones case the claimant could only do work "of a very selected nature" and could only work for short periods. He could not find employment unless a job was specially made for him. In the Hale case the claimant suffered an injury to his spine and could only take a job where he could sit down or lie down all of the time. He was limited to light jobs which would necessarily be created specially for him.

In *Yednock v. Hazle Brook Coal Co.*, supra, just as here, the claimant could do light work generally but could not "stand on his feet too long", and he admitted that he could do light work if he could get a job. We there held that the claimant could not be classified as a "nondescript".

The evidence will not support a finding that this claimant should be classified as a "nondescript". The doctor who examined and attended the claimant agreed that he could not follow his former employment as an iron worker or iron rigger as he would not be able to do climbing; that he could not stand all day long at a machine, but could perform labor where he had an opportunity "to sit down once in a while." He could not perform labor which requires "prolonged standing or prolonged walking." The disability was limited to the condition of his foot. There was no impairment of functions in any other part of his body than his one leg. While the claimant took the stand, he not only failed to contradict the doctor's statements as to his ability to work, but he corroborated them. He admitted specifically that he could take a job where he had occasional periods of rest. The testimony will not support any other finding than that he could fill a job where he had occasional periods of rest. Taking into account the fact that his injuries were confined to his one leg and perhaps to his one foot, we could not place him in the "nondescript" class unless all men who are so unfortunate as to lose one leg are to be so classified.

In addition the claimant was offered employment as

a timekeeper or tool keeper by his employer and he so admits. He declined the offer because he was afraid he would lose his compensation. After the referee denied him compensation, it is true he then offered to take work as a tool keeper, but it was then the dead of winter and a job was not available at that time in the iron trade.

It will also be noted that the disability of this claimant was confined to his leg or one foot and, if his own theory were adopted, he would be confined to compensation for the loss of industrial use of a member. The facts, however, showing that the claimant is not totally disabled likewise show that he has not lost the industrial use of a member.

The judgment is reversed and the record is returned to the court below to the end that it may be in turn remitted to the board for the purpose of determining the extent of partial disability of the claimant.