## MILO C. BERG v. LEE SADLER AND ANOTHER.[1]

November 30, 1951.

No. 35,551.

[1]Reported in 50 N. W. (2d) 266.

*Streissguth, Berens & Rodenberg,* for relator.
*J. Frank Boyles* and *S. S. Larson,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review an order of the industrial commission denying the petition of Milo C. Berg, employe, for additional compensation. The award, in addition to authorizing compensation for a healing period of 50 weeks, allowed employe 60 weeks' compensation for 40 percent permanent partial disability of his left foot and ankle and 112½ weeks for 75 percent permanent partial disability of his right foot and ankle.

The award followed the provisions of M. S. A. 176.11, subd. 3 of which fixes compensation for healing at a maximum of 50 weeks, and subd. 3(17) of which provides that for the loss of a foot compensation is payable to a maximum period of 150 weeks. Based thereon, employe's compensation was computed as follows:

Healing period, 50 weeks at $24 per week . . . . . . . . . . . . . . . .$1,200
40 percent disability for left foot and ankle,
   60 weeks at $24 per week . . . . . . . . . . . . . . . . . . . . . . . . . . 1,440
75 percent disability for right foot and ankle,
   112½ weeks at $24 per week . . . . . . . . . . . . . . . . . . . . . . . . 2,700

Total compensation awarded . . . . . . . . . . . . . . . . . . . . . . . . . .$5,340

It is employe's contention that this was erroneous, and that the award should have been based on M. S. A. 1945, § 176.11, subd. 4,[2] which provides:

[2]The statute in force in 1946, when employe was injured, and which was subsequently amended by L. 1947, c. 611, § 3, and L. 1949, c. 540, § 3.

"For permanent total disability, as defined in subdivision 5, * * * $24.00 per week * * *. * * * during the permanent total disability * * *, but * * * not [to] exceed $10,000 in any case, * * *."

And upon § 176.11, subd. 5, which includes under total disability—

"any other injury which totally incapacitates the employee from working at an occupation which brings him an income * * *."

Employe asserts that the evidence clearly establishes that he is permanently and totally disabled; therefore, that the award should provide for his continued compensation until the maximum of $10,000 provided by § 176.11, subd. 4, has been paid.

The facts are as follows: On June 4, 1946, employe, while working for respondent Lee Sadler on highway construction between Fairfax and Gibbon, sustained injuries when a dragline ran over both his feet. He was hospitalized for 99 days and was compelled to use crutches for about two months after his discharge from the hospital. The accident resulted in cuts and fractures to his ankles and feet, followed by discoloration, scars, impairment of the circulation in both ankles and legs, with resulting ulcers and permanent deformity of his feet.

There is little variation in the medical testimony as to the percentage of disability to employe's ankles and feet. Medical experts called by him fixed it at 75 percent functional disability to the right foot and ankle and 50 percent functional disability to the left foot and ankle. Medical testimony submitted by respondents fixed the disability to employe's right foot and ankle at between 60 and 65 percent, and to his left foot and ankle at between 30 and 40 percent. Such testimony amply supports the referee's finding of 40 percent permanent partial disability to the left foot and ankle and 75 percent permanent partial disability to the right foot and ankle; and, were it sufficient to consider the respective disabilities described as separate and distinct factors, unrelated one to the other, it is clear that employe's compensation was properly measured by § 176.11, subd. 3 (17).

Employe's position, however, is that the combined disability of each foot and ankle makes it impossible for him to work at any occupation of any kind for which he has the capacity for performance for more than two or three hours at a time; that thereafter his feet swell and remain painfully swollen throughout the day so that he cannot continue work; and that as a result he cannot procure employment of a permanent and continuous nature; in consequence of which he must be held to have sustained a permanent total disability as defined by § 176.11, subds. 4 and 5, as above set forth.

On the question of permanent total disability, the evidence discloses the following: At the time of the hearing in 1950, employe was 47 years of age and had lived on a farm practically all his life. His formal education did not extend beyond the seventh grade. The only work he was ever qualified to do was either farm or road work. He has been unable to hold a steady job since the accident almost five years ago. The only work he has performed since then has been occasional help to farmers in his neighborhood driving tractors. After being thus engaged for a short time, he experiences great pain, his legs become painfully swollen, and he is required to stop working. This is particularly true whenever he walks or is required to hold his feet in a dependent position. He has sought aid through physical therapy and has attempted to work whenever possible. The maximum he has been able to earn during any year since the accident is between $300 and $400.

Dr. Glen E. Nelson, called by employe, testified that employe is unable to do any work which requires standing on his feet; that they will swell and pain him even when he drives a tractor; that ulcers which developed on his legs were the result of poor circulation caused by the accident; and that in his opinion the condition described is permanent in both legs.

Dr. Edward T. Evans, called on behalf of respondents, testified that employe should gradually improve some, but that he would carry considerable residual disability of both feet and ankles, especially the right; that surgery would not lessen the disability and would be fraught with considerable danger because of the circula-

tory condition of the leg; that when working his feet swell, and the right foot especially will not tolerate prolonged weight bearing; and that he is not able to walk any distance on uneven ground. The witness testified that in his opinion employe did not have a 100 percent disability, but that he could not hold any employment where he would be required to stand any length of time or to hold his feet in a downward position, such as would be involved in riding a tractor. However, in the opinion of this witness, there was a great deal of work employe could do. He thought that he had the ability to stand for upwards of three hours, but could not stand at a bench; that he could move about; that he could carry on in a particular type of job in which he would be able to sit down from time to time and get off his feet; and that at night the swelling would go down. He was of the further opinion that employe's condition would not improve, and that his ulcers might recur from time to time.

Dr. Harvey Nelson, also called on behalf of respondents, testified that there would be a tendency toward some improvement for employe as better collateral circulation was set up, but that there would not be much change over his present condition; that the fact that both feet were injured and disabled made his handicap greater than the sum total of the specific disability to his feet; that his ability to work would depend on his tolerance and the type of work he was doing; that it would be better if he found a job where he would not be on his feet; that his feet would swell and that ulcers would be apt to break open again; that it would be difficult for him to do things which would require walking; and that he could operate the ordinary farm machinery and do milking and chores and might successfully operate a passenger elevator where he could sit down.

The commission's findings do not indicate that in arriving at its decision it considered whether the sum total of the specific injuries, when considered together, resulted in permanent total disability. Its findings rather related to the specific disability applicable to each ankle and foot of employe.

■ It is obvious from M. S. A. 176.11, subd. 5, defining total disability, that, although an injured person may be able to perform some part of an occupation, nevertheless, from a legal viewpoint, he may be regarded as totally permanently disabled if he cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity. In other words, where the services he can perform are so limited in quality, quantity, or dependability that a market for them does not exist, he may well be classified as totally disabled. See, Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433; Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338.

■ It is true that employe has performed some work since the accident five years ago. This did not constitute a continuous or steady employment and was performed by employe under great pain and suffering. This factor would not necessarily disprove total permanent disability. An intermittent and limited capacity to earn *something* may not, from a legal concept, lessen a permanent total disability which otherwise falls within the statutory definition thereof set forth in § 176.11, subd. 5. Green v. Schmahl, 202 Minn. 254, 278 N. W. 157; Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 266 N. W. 699; Monahan v. Supreme Lodge, 88 Minn. 224, 92 N. W. 972. As stated in Horovitz, Workmen's Compensation, Incapacity, p. 279:

"Permanent and total disability * * * awards have been upheld, although the employee was *not 'absolutely helpless* or physically broken and wrecked, for all purposes except merely to live,' and in spite of previously obtaining occasional employment under rare conditions and at small remuneration."

■ It is suggested that employe might train and qualify himself for other work or that he might perform services not requiring the use of his feet, such as that of an elevator operator. There is nothing to indicate that employe is otherwise capable of handling such work, or, if he does engage therein, that he will not be plagued with the same suffering he experiences when he attempts to operate tractors for farmers in his vicinity. Accordingly, the suggestion must fall

in the realm of speculation and conjecture and, as such, be regarded as insufficient to form the basis for a finding of fact. Green v. Schmahl, *supra;* Berry v. United States, 312 U. S. 450, 61 S. Ct. 637, 85 L. ed. 945; Eckley v. Rae, 128 Pa. Super. 577, 194 A. 575; Rio Grande Motor Way, Inc. v. De Merschman, 100 Colo. 421, 68 P. (2d) 446.

■ The case is distinguishable from Krnetich v. Oliver I. Min. Co. 202 Minn. 158, 277 N. W. 525, cited by respondents. There, it was held merely that the commission properly refused to adopt as a determining factor on the issue of total or partial permanent disability evidence that the employe, after diligent effort, had not been able to secure work because of economic factors affecting the labor market, and where all medical testimony was in agreement that he could readily perform services in certain capacities when such work became available in the locality in which he resided. Here, relator's difficulty is his inability to pursue any income-earning occupation for which he has either the capacity or training.

■ As stated above, the issue which must be determined would seem to involve a fact question not determined by the commission. In view of the authorities above cited and in the absence of a finding on this issue, it would seem to be in the best interests of all parties that further proceedings be had before the commission, and, if necessary, that further evidence be then received and considered, so that the specific question above outlined may be determined and an appropriate order based thereon may be made.

Reversed and remanded for further proceedings in accordance herewith.

Relator is allowed $250 attorney's fees over and above his costs and disbursements.