154 P.2d 1000

**LIPE v. BRADBURY et al.**

No. 4861.

Supreme Court of New Mexico.

Jan. 10, 1945.

Allen M. Tonkin and George R. Craig, both of Albuquerque, for appellants.

Rodey, Dickason & Sloan and Frank M. Mims, all of Albuquerque, for appellee.

MABRY, Justice.

Claimant-appellee filed suit against defendants-appellants, employers and their insurer, seeking to recover under the New

Mexico Workmen's Compensation Act for total and permanent disability resulting from a fractured left wrist. Defendants in their answer set forth that claimant had been paid the statutory compensation for forty-four weeks on account of the injury and denied that claimant was totally and permanently disabled as a result of the injury complained of, or that he was then suffering from any further compensable injury. The case was tried to a jury which returned a verdict of total and permanent disability because of the injury and general bodily disability flowing therefrom as complained of, and judgment was entered granting an additional 506 weeks of compensation together with interest on past due installments and $1200 as attorney fees for the trial below and defendants appeal.

While a number of assignments of error are made and relied upon these may, for convenience, be appropriately grouped under three points for discussion and decision, to-wit: (1) Did the the trial court properly refuse to require claimant to elect whether to submit his case solely upon the question of total and permanent disability or in the alternative upon the question of permanent partial disability? (2) Is the verdict of total and permanent disability supported by substantial evidence? (3) Is claimant entitled to compensation for total and permanent disability in any event?

Claimant's claim to total and permanent disability, as we view the case, does not rest merely upon the fact that he suffered a badly fractured left wrist. He claimed that this severely fractured left wrist which never properly healed and which was left in such bad condition that it caused restlessness, nervousness, substantial loss of weight, loss of sleep and a general debilitated condition, resulted in total and permanent disability. This was, he says, not only because of the loss of the use of his entire left arm, but by reason of the several complications resulting from the injury. Defendants argue that the disability suffered is covered by, and falls under, the schedule which permits compensation for the total loss, or loss of use, of a member, at most, and cannot, under the circumstances, come under the residuary clause of the statute where compensation may be afforded for total and permanent disability. There are few real conflicts in the evidence, and these, of course, will be resolved in favor of the correctness of the verdict.

Claimant is a man sixty-five years of age with a third grade education; he was a cowboy in the early years of his life, then farmed for a period of time, and for the past twenty-five years had followed the trade of carpenter. He has never done, and is not qualified to do, anything but manual labor. While an employee of defendants Bradbury and Marchant in general construction work he fell from a scaffold and suffered thereby an impacted Colles's fracture of his left wrist. This was a fracture of the distal, or lower, end of the radius, the large bone of the forearm. In other words, the end of the large bone of the forearm was broken off just

above the wrist, the fracture being an impacted one whereby the long end of the bone above the line of fracture was driven into the short end of the bone below the fracture in an unnatural position, at an angle, in fact, of about fifteen degrees from normal. The wrist was not set; i.e. no attempt was made to reduce the impaction or to correct the angulation, it being put into a cast merely, and for the reason— as claimed and not disputed—that it would not have been good medical practice to attempt to break up such an impacted fracture in a man of claimant's age because of the likelihood that the bones might not unite at all if, under the circumstances, they were pulled apart and a break-up of the impacted fracture attempted. The injury occurred many months before trial, and all hopes for improvement of the condition must now be abandoned.

The testimony shows that the broken ends of the bones were "jammed together like two sticks" and healed in that position. It is impossible to force the wrist to a normal range of motion because the joint "locks," due to the angulation of the distal fragment of the radius where it meets the wrist joint; and this condition causes impactment of lateral motion and flexion and spasms of the muscles and tendons of the forearm upon both lateral, and forward-backward, motion of the wrist. The use of the wrist in any kind of manual labor would naturally cause more pain than if it were moved in ordinary and quiet motion when not working; and the pain resulting from use would extend up through the arm and into claimant's body and it would affect his entire body. Even some of the unconscious movements in sleep cause pain and nervousness.

He has no grip in his left hand and cannot perform substantially any ordinary manual labor in his present condition, which is permanent. The pain and nervousness which result from the condition of the wrist extends over the entire body and make claimant nervous, weak, and "flighty." He was found to be quite nervous and debilitated at the time of his examination a few days before the trial; and this nervousness, loss of weight, suffering, and general debilitation are all the result of the injury to his wrist. One cause of the nervousness may be pressure on the nerve of the wrist from the callous formation thrown out around the fracture, according to the medical testimony. This extreme nervous condition, affecting claimant's entire body and nervous system, is established by objective findings, and evidence. Claimant had, a few months prior to the injury in question, suffered an injury to his pelvic bone as a result of which one of his legs is somewhat shortened, but the previous injury did not interfere to any appreciable extent with his work as a carpenter.

Defendants' contention under Point One is to the effect that claimant should have been required to elect whether, in prosecuting his claim under the Act, he would ask for total and permanent disability, or for permanent and partial disability. Defendants had paid all the compensation

which they claimed was owing under any theory and now contend that there was no longer any disability at all for which compensation was recoverable. There is no merit to this point.

The complaint and claim for compensation, after setting up the injuries and the circumstances thereof and alleging total and permanent injury to the whole body, asks for "compensation" on account thereof. We know of no rule which would require an election on the part of a claimant under the Workmen's Compensation Act as to whether he will seek a finding, or verdict, of total and permanent disability or for something less, at the risk of being allowed no compensation at all if he should guess wrong as to the extent of his injuries.

The Act provides that "such claim shall be informal in character and shall set forth sufficient facts for the determination of the same." 1941 Comp. Sec. 57-915. The case of Gonzales v. Pecos Valley Packing Co., 48 N.M. 185, 146 P.2d 1017, cited and relied upon by defendants, is not in conflict with what we here hold.

■ Technical precision in pleading is not generally required in Workmen's Compensation cases. Glasgow v. State Industrial Commission et al., 120 Okl. 37, 250 P. 138; Higginbotham v. Oklahoma Portland Cement Co., 155 Okl. 264, 9 P.2d 15; Miller v. State Industrial Accident Commission of Oregon, 149 Or. 49, 39 P.2d 366; Amerada Petroleum Corp. v. White et al., 179 Okl. 82, 64 P.2d 660; Horton v. Industrial Commission et al., 88 Utah 306, 54 P.2d 249.

■ "Workmen's compensation statutes are sui generis and create rights, remedies and procedure which are exclusive. They are in derogation of the common law and are not controlled or affected by the code of procedure in suits at law or actions in equity except as provided therein." Hudson v. Herschbach Drilling Company, 46 N.M. 330, 128 P.2d 1044, 1045. And, the Act will be liberally construed in favor of the workman. Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342.

■ Under this point defendants further complain that the trial court should not by an instruction given, and objected to, have permitted the jury to speculate upon whether the injury came under the schedule or the residuary clause. But since we hold that the jury had a right, under the claim presented, to determine the extent of the injury and whether it was confined to the member the injury to which must be compensated under the specific schedule, or whether the injury produced total and permanent disability under the residuary clause, as claimed, the instruction complained of is unobjectionable.

The question raised under Point Two we also hold to be without merit.

Without referring much more fully to the evidence than is shown in the foregoing statement of the case on the question of total and permanent disability, it is enough

to say that the verdict is supported by substantial evidence. One of defendants' own physicians, testifying upon cross examination, conceded that claimant would probably be unable, because of the condition of the wrist and attending pain upon use, to carry on his work in the manner that an ordinary carpenter would; that he could not lift heavy objects, or nail constantly and hit nails with his hammer, although this witness said "he might do some light 'piddling' around of some nature." Another doctor, testifying for claimant, testified that the muscle spasms which result from use of the arm are clearly objective indications of pain which cannot be feigned, and he also testified to the effect that claimant's severe nervous condition might be traced directly to the injury.

And, it cannot be said that because claimant was able, for awhile after the injury, to do a little light work, invariably attended with painful effects, this would be sufficient to impair the jury's finding of total and permanent disability. New Mexico State Highway Dept. v. Bible, 38 N.M. 372, 34 P.2d 295; Rio Grande Motor Way v. De Merschman, 100 Colo. 421, 68 P.2d 446. "Light 'piddling' around of some nature" is not calculated to bring any substantial compensation.

It is not necessary to determine whether total and permanent disability as contemplated by the statute may arise from the inability of the workman to engage in his usual occupation, as distinguished from *any occupation whatever* for remuneration for profit. A like point was also noticed, but not decided, by this court in two previous decisions. New Mexico State Highway Dept. v. Bible, supra, and Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864. It is unnecessary to here decide that narrower question for the reason that there is evidence to support the general verdict, as well as the special finding, of total and permanent disability from substantially engaging in any occupation whatever for remuneration or profit. The jury answered "yes" to the claimant's special interrogatory No. 1 which was:

"Do you find from the evidence that the Plaintiff has suffered the total loss of use of his left arm as a result of the injury on May 26, 1942, and that in addition to such loss of use he suffers such pain, nervousness, sleeplessness, weakness, debilitation and loss of weight from the condition of his left arm as a result of said injury that his whole body is affected thereby to the extent that he is totally and permanently disabled from performing any work for which he is fitted?"

It becomes a jury question, of course, unless the trial court could say as a matter of law that claimant is not totally and permanently disabled within the contemplation of the statute. Bubany v. New York Life Ins. Co., supra.

The evidence is sufficiently substantial to support a verdict of total and permanent disability; a disability which would make claimant unable to perform substantially any manual labor, i. e., for all

practical purposes, disabled from competing for remunerative employment in any general field of endeavor in which he could engage. See Bubany v. New York Life Ins. Co., supra; Rio Grande Motor Way, Inc., v. De Merschman, supra; Horovitz Injury and Death Under Workmen's Compensation Laws (1944), page 281; Vol. 2 Schneider's Workmen's Compensation Law, 2nd Ed., Section 400. Not only could he perform no "heavy labor, such as had been his occupation in the past" (Robinson v. Mittry Bros., 43 N.M. 357, 363, 94 P.2d 99, 102), but, viewing the evidence in a light most favorable to him, as we must, he could only do some "light piddling around of some nature" as regards *any* kind of ordinary manual labor, the only work for which he was fitted. See annotations in 67 A.L.R. 785 and 98 A.L.R. 729 for exhaustive treatment of the question of what amounts to total incapacity within Workmen's Compensation Acts.

Under Point 3 we have a question closely related to that one of substantial evidence, already discussed, that of whether claimant, even though he be totally and permanently disabled in the particular manner here shown, should, nevertheless, be confined to compensation only for loss of the use of the arm. Defendants' contention seems to be that since the actual, or direct, injury was suffered by an arm that at most the schedule fixing compensation for loss of use of that member (treating it, if total and permanent, as if it were a loss by severance) is the measure of recovery.

However, whether total loss of use of the member would, under the statute, be equivalent to loss by severance is a question we do not decide. The basic error in defendants' argument under this point is that it fails to distinguish between the actual physical injury directly suffered by the particular member and the general bodily disability resulting therefrom.

Defendants contend that under the doctrine announced by this court in Gonzales v. Pecos Valley Packing Co., supra, the claimant's compensation should be limited to that provided by the schedule for the injured member only. Defendants misappraise our holding in the Gonzales case. There claimant's arm had been severed and there was no showing, as here, of such general impairment to the rest of the body by reason of the particular injury, except as to some over-all impairment of performance such as would naturally follow in any case from the loss of such a member. We there recognized the difference and distinguished the circumstances from that shown in the case of Mathews v. New Mexico Light & Power Co., 46 N.M. 118, 122 P.2d 410, where there was impairment to the claimant's whole body as the result of the injury to his leg, and where he was held to be entitled to compensation for total and permanent disability.

Defendants concede that if it were a question, say, of infection or of tuberculosis, resulting from injury to and loss of a member that a different and distinguishable case would arise. We are unable to

agree with the contention that only infection or tuberculosis affecting the whole body would take an injury such as this out of the specific schedule for compensation.

As we appraise the Mathews and Gonzales cases it is this: Where the injury is confined to a scheduled member and there is no impairment of any other part of the body because of such injury, compensation is limited to that provided by the statute; this is true even though other considerations such as age, lack of training, or other conditions peculiar to the individual make a case where the injury to the member may result, in the particular case, to some, if not total and permanent, disability. But, where general bodily impairment and disability is shown, as here, then compensation is allowable for such total and permanent disability notwithstanding the cause of the disability may be traced to a particular injury of a specific member for the loss (or loss of use) of which scheduled compensation is provided. We have here a clear jury finding as to how the disability arose and of what it consists.

Defendants make the erroneous contention that the trial court should not have permitted the jury to consider these questions of general unfitness for work, sleeplessness, loss of weight, debility and nervousness when attempting to use the hand (and even when resting it from use), all claimed to be the result of the severe arm injury.

They complain also that much of this evidence results from the claimant's own statement as to how, and under what conditions, he suffered to the extent that he could perform substantially no manual labor. But we cannot see how this testimony could impeach, or impair, the verdict if the testimony given be admissible and the jury believes it. Moreover, we cannot escape notice of other and additional testimony, that of the doctors, based upon objective, as well as subjective, findings that the condition complained of could, and possibly did, result specifically from the particular and unusual wrist injury. Medical testimony, we know, need not be based upon positive evidence but may rest upon reasonable inferences, or opinion. Elsea v. Broome Furn. Co., 47 N.M. 356, 143 P.2d 572.

We are not unmindful of the opportunities afforded workmen to unfairly claim, and establish, disability above and beyond that suffered by the injured member itself, under such circumstances as this case presents; but opportunities for claiming and securing more than that to which one is legally entitled is, unfortunately, not confined to this class of litigation. Such opportunities exist generally where the facts are in dispute and courts and juries are called upon to resolve the truth. But no reason appears why a claimant under this Act should be subjected to any different test upon the question of proof, than any other litigant. The triers of fact must, in this, as in all cases, bear their fair share of responsibility for determining the truth.

Likewise, we see no reason for saying that, while in cases of general infection or tuberculosis—because these present conditions more readily, and certainly, ascertainable as facts—injury to the particular scheduled member may result in such general disability as will justify compensation therefor, while illness or disability resulting from conditions such as are here found to exist, although uncommon in experience and generally not to be expected, may not so result.

The cases cited and relied upon by defendants in their excellent and exhaustive briefs are to be distinguished as involving situations where the disability could, in our opinion, be said to extend only to the particular member.

All assignments are without merit and the judgment should be affirmed. And, an additional attorney fee of $400 is hereby fixed and allowed for and on account of this appeal.

And it is so ordered.

SADLER, C. J., and BRICE, J., concur.

LUJAN, J., did not participate.

BICKLEY, Justice (concurring specially).

I concur. Whether the cause of the nervousness and other symptoms extending to portions of the body other than the member receiving the direct injury could be relieved by amputation of a portion of the forearm, and whether it would be a duty on the part of the workman to submit to such an operation in order to reduce the compensation, if the operation were not serious and critical, is a question not presented by this record. This court can act only on the facts before it, not upon the uncertain possibilities of the future. See Simpson v. New Jersey Stone & Tile Co., 93 N.J.L. 250, 107 A. 36, and Shepard's Citations thereto.

As to the duty of an injured workman to submit to proper medical and surgical treatment including operations, even to the extent of some amputations, see Burns' Case, 298 Mass. 78, 9 N.E.2d 719; Robinson v. Jackson, 181 A. 704, 13 N.J.Misc. 858; In re Hudson, 13 Wash.2d 673, 126 P.2d 765; Louisville & N. R. Co. v. Kerrick, 178 Ky. 486, 199 S.W. 44; Kolbas v. American Boston Mining Co., 275 Mich. 616, 267 N.W. 751.