175 P.2d 395

## HELMS v. NEW MEXICO ORE PROCESSING CO. et al.

### No. 4927.

Supreme Court of New Mexico.

Dec. 19, 1946.

Hubert O. Robertson, of Silver City, for appellants and cross-appellees.

Woodbury & Shantz, of Silver City, and Tom R. Files, of El Paso, Tex., for appellee and cross-appellant.

HUDSPETH, Justice.

This is an appeal by the defendants and a cross-appeal by the plaintiff from a judgment granted plaintiff on the basis of 40% total disability by reason of a right indirect inguinal hernia sustained by him in an accident arising out of and in the course of his employment.

Defendants' main contention is that under the hernia paragraph of the Workmen's Compensation Act, N.M.S.A., 1941 Comp. Sec. 57-918, plaintiff was not entitled to compensation for permanent disability upon his refusal to submit to an operation upon the tender by defendants of the sum fixed by statute for medical and hospital expense. Plaintiff's theory is that his claim filed in the District Court for total permanent disability, or 100% instead of 40%, should have been allowed and judgment granted therefor.

Plaintiff, a man 59 years of age with fourth grade education, had been employed by defendant for about five months prior to the accident, Nov. 27, 1944. He immediately reported to his employer's surgeon, who advised him to rest for a few days, after which he resumed work, at a "sitting job," and continued at that supervisory work for a few weeks. He then bought a small restaurant which his family conducted with a little help from plaintiff until April 28, 1945, when he sold it.

Plaintiff did no other work between November 27, 1944, the date of the accident and the date of the trial, July 11, 1945. He testified that he applied for work at two mines but was refused employment because of the hernia.

A surgeon consulted by plaintiff and employer's doctor both recommended surgery. Doctor Watts, plaintiff's witness, testified, in part, as follows:

"Q. In such an operation, the intestines of the patient are touched, or exposed, or moved, are they not? A. Not necessarily.

"Q. Would you state that in Mr. Helms' case that might be necessary? A. No, we only expose the intestines in case there is a strangulation of the intestine, or strangulation of the omentum. * * *

"Q. Do you always give a general anesthetic, doctor, when you do a hernia operation? A. Not always. I have done several herniae under strictly local anesthesia while the majority of herniae are performed under a spinal anesthesia. Anesthesia in such cases involves only the lower segments of the spinal cord and the patient has sensation from the umbilicus upward, but none from the umbilicus down.

"Q. Doctor, what percentage of the hernia operations that you have done made a full and complete recovery? A. I have had 5% recurrence. * * * I may add that practically all of the recurrences which competent surgeons confront have to do with the direct, rather than the indirect type of hernia. * * *

"Q. Doctor, assuming a man 59 years of age, who had done hard, manual labor all his life, suffering from a right inguinal hernia, if he were not operated on, could you state whether or not he would be totally disabled to do hard labor? A. There are, I presume, many thousands of men working today who do have herniae, some of whom are doing industrial work, and many of these employees obtained employment without physical examination and herniae have been discovered later on when industrial laws made it necessary to have a complete physical examination. In examining such employees, we find a rather large percentage of herniae, some of which are giving symptoms and some of which employees state are symptom free;

some employees get by by using a well-fitting truss; some wear no support at all; so, after all, each complaint resolves itself into a personal equation—some employees will have symptoms and some will not.

"Q. Back to Mr. Helms; would you advise him, doctor, to do heavy, manual work in his present condition? A. No, not without the use of a truss.

"Q. Do you feel that a truss would be a successful support for him in doing heavy, manual labor? A. I do not recommend a truss in any instance where surgery can be utilized with a fair promise of success."

Dr. Frazen, defendants' witness, testified, in part, as follows:

"My findings at that time were right inguinal hernia. Treatment advised was surgery. Treatment needed is surgery performed; in hospital two weeks; light work six weeks, and regular work in three months. * * *

"I told him, as I understood our compensation law, that they allowed $100.00 for surgery, $50.00 for hospitalization, which I explained to him was not enough—didn't cover it—and also that from the other cases that we had had, they allowed $3.00 a day for disability compensation until he resumed work, which was usually three months. He said he didn't feel at

that time that he would like to lay off that length of time for two reasons: 1) Scarcity of labor, and 2) from a financial standpoint, * * *

"In industrial work, we classify men for light work, average work, or heavy work. Seldom, if ever, do I classify a man for heavy, manual work at the age of Mr. Helms. Industrial organizations will not take a man of that age for what they consider heavy, manual labor.

"The Court: In your opinion, he can now do average work?

"The Witness: He can do average work."

The trial court found that plaintiff had worked all his life at hard manual labor, that he had no special skill or ability to do any other type of work, and is only fitted to do hard manual labor; that the injury and resulting hernia had rendered plaintiff unable to do hard manual labor; that plaintiff's refusal to submit to a surgical operation was not unreasonable, and that the injury and resulting hernia had caused partial permanent disability of plaintiff to the extent of 40% of total disability.

There is practically no conflict in the expert testimony, and it is admitted that plaintiff sustained the injury in the course of his employment.

The hernia paragraph of the Workmen's Compensation Act, N.M.S.A., 1941 Comp., Sec. 57-918, is as follows:

"A workman in order to be entitled to compensation for a hernia, must clearly prove: (1) that the hernia is of recent origin, (2) that its appearance was accompanied by pain, (3) that it was immediately preceded by some accidental strain suffered in the course of the employment, and (4) that it did not exist prior to the date of the alleged injury. If a workman, after establishing his right to compensation for hernia as above provided, elects to be operated upon, a special operating fee of not to exceed one hundred dollars ($100.00) and reasonable hospital expenses not exceeding ($50.00) fifty dollars shall be paid by the employer or his or its insurer. In case such workman elects not to be operated upon and the hernia becomes strangulated in the future, the results from such strangulation shall not be compensated; Provided, that before said workman shall be compelled to prove the facts above mentioned in order to be entitled to compensation for hernia the employer must first prove that he caused the workman to be physically examined previous to his employment for the existence of a hernia, and provided further that where the employer has not made provisions for, and does not have at the service of the workman adequate surgical, hospital and medical facilities and attention, or fails to offer such during the period necessary said workman shall have the right to select the surgeon operating upon him and/or the hospital wherein such operation is performed and said workman is treated therefor."

Defendants maintain the hernia paragraph quoted above is not intended to provide plaintiff with compensation for permanent disability upon his refusal to submit to recommended surgical treatment for hernia. The question is one of first impression in this state, although defendants cite many cases from other jurisdictions supporting their theory.

The Supreme Court of Iowa in Stufflebean v. City of Fort Dodge et al., 233 Iowa 438, 9 N.W.2d 281, 283, said:

"Counsel on both sides concede that which our investigation of the decisions tends to verify, namely, that this precise question has not been previously presented to this court. In most of the states, the compensation statutes specifically provide that an arbitrary or unreasonable refusal to submit to offered medical or surgical treatment, which does not seriously endanger claimant's life or health and which is shown to be reasonably certain to minimize or cure the disability for which compensation is sought, will warrant reduction, suspension or forfeiture of such compensation. In a number of states where there is

no such express statutory provision, a similar rule appears to prevail by reason of judicial decision. Strong v. Sonken-Galamba [Iron & Metal] Co., 109 Kan. 117, 198 P. 182, 18 A.L.R. 415; Gentry v. Williams Bros., 135 Kan. 408, 10 P.2d 856; Schiller v. Baltimore & O. R. Co., 137 Md. 235, 246, 112 A. 272, 276; Pritchard v. Ford Motor Co., 276 Mich. 246, 267 N.W. 622; Myers v. Wadsworth Mfg. Co., 214 Mich. 636, 183 N.W. 913; O'Brien v. Albert A. Albrecht Co., 206 Mich. 101, 172 N.W. 601, 6 A.L.R. 1257; Kricinovich v. American Car & Foundry Co., 192 Mich. 687, 691, 159 N.W. 362; Dosen v. East Butte Copper Min. Co., 78 Mont. 579, 254 P. 880; Neault v. Parker-Young Co., 86 N.H. 231, 166 A. 289; American Smelting & Refining Co. v. Industrial Comm., 76 Utah 503, 290 P. 770.

"While the rule appears to be generally recognized and applied, there is of course some variation in its application. Where the evidence is undisputed on the issue, the question becomes one of law; where there is a conflict in the evidence, it is one of fact. Where a question of law is presented, the courts may make a final determination of it. Pritchard v. Ford Motor Co., supra. Where disputed questions of fact are present and undecided, it is necessary to remand the case for further proceedings. Whittika v. Industrial Comm., 322 Ill. 368, 153 N.E. 708."

Counsel for both parties concede that the meaning of the hernia paragraph quoted above is not clear. Colorado, from which state we are informed the act was taken, has amended the original act by eliminating the limitation on the operating fee. Spirakoff v. Pluto Coal Mining Co., 105 Colo. 552, 100 P.2d 154. The act must be construed as a whole and given a liberal construction. Martin v. White Pine Lumber Co. et al., 34 N.M. 483, 284 P. 115.

The limitation of the operating fee and hospital expenses to $150 appearing in the hernia paragraph was evidently written into the act at the instance of employers. It is not adequate, according to defendants' own physician, who insisted that the after care of the surgical operation is as important in a hernia case as the operation itself.

While another section of the act (N.M.S. A., 1941 Comp., Section 57-920) contains the usual provision to the effect that if an injured employee shall refuse to submit to medical or surgical treatment reasonably essential to promote his recovery, the court may, in its discretion, reduce or suspend his compensation (Bethlehem Steel Company v. Industrial Accident Commission et al., 70 Cal.App.2d 382, 161 P.2d 59), the employer in order to be able to invoke that provision must tender the entire cost of the operation. Only upon such tender

and when the operation is one which a person of ordinary prudence and courage would undergo for his own betterment regardless of compensation, the rule applies. Shrewsbury v. State Compensation Com'r et al., 127 W.Va. 360, 32 S.E.2d 361.

The niggardly policy of employers toward their injured workmen has contributed to the growth of prejudice which is manifested in such verdicts as that rendered in Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000. Too close connection between the medical staff and the claim adjuster has like effect. Wilson et al. v. Sinclaire et al., 109 Colo. 592, 128 P.2d 996; Bethlehem Steel Co. v. Industrial Accident Commission et al., supra.

The question whether plaintiff acted reasonably or not in refusing the operation is a question of fact and the trial court was not limited to expert testimony in considering the question. Under the facts in this case we cannot say that plaintiff's refusal was, as a matter of law, unreasonable, and the finding of the court, being supported by substantial evidence, is conclusive in this court.

The award made by the trial court to plaintiff on the basis of 40% permanent disability is attacked by both parties. Plaintiff maintains that the findings as to his age, education, etc., in connection with the finding that he is unable to do hard manual labor, entitles him to an award on the basis of total permanent disability as a matter of law.

On the other hand, the defendants point out that plaintiff has a mild form of hernia, not necessarily disabling, and the kind easiest to repair; that under the judgment in this case plaintiff will receive payments which will total $3,960 which is $720 more than the maximum specified for the loss of an arm at the shoulder, or a leg at the hip, and $1,710 more than for the loss of an eye, measured by the specific schedule of losses set out in the statute; that if he should prevail in his cross-appeal and be awarded payments on the basis of total permanent disability, they would total $9,900; that all the evidence is to the effect that he can do average work as distinguished from light or heavy work; that large industrial organizations in normal times do not employ men of his age to do hard manual labor.

There is much discussion in the briefs of the spirit or policy of our Workmen's Compensation Act. An examination of cases involving herniae in other jurisdictions show that the triers of facts have assessed the industrial disability of the workers who have suffered such injuries from 5% to 100%. In some cases a distinction is made between skilled workers and common laborers. Differences in these statutes aside, it is evident that local conditions and prevailing notions of economic justice have had a bearing on the determination of the

questions. In large industrial centers where one employer has 100,000 or more men on his payroll little thought is given to the ability of the employer to pay or the industry to bear generous awards to injured workmen.

A case reflecting these views is that of Hebert v. Ford Motor Co., 1938, 285 Mich. 607, 281 N.W. 374, 375, where two awards of total permanent disability were given the same workman against the same employer within eleven years. The court said:

"Defendant contends plaintiff has split his cause of action.

"Obviously, plaintiff had no cause of action against his employer in the sense of the common law, or any amendment thereto, to split. Proceedings under the workmen's compensation act, Comp. Laws 1929, Sec. 8407 et seq., have nothing to do with common-law actions for damages for negligence on the part of the employer. Its enactment marked the crystallization into a legislative enactment of the economic fact that the ultimate consumer pays for the compensation of injured employees in the increased cost of the product. It aims at compensation, not damage. It is wholly substitutional in character and displaces the common-law liability for negligence. It should be administered substantially as insurance of a social character. * * *

"The fact that in 1927 plaintiff, engaged in skilled employment, suffered an accidental injury which totally destroyed his earning capacity in the employment in which he was working at the time of the accident does not preclude him from recovering compensation for total disability arising from an accident in another kind of employment in which he was engaged under the act as it now stands."

See Kadykowski v. Briggs Mfg. Co. et al., 304 Mich. 503, 8 N.W.2d 154.

Plaintiff's theory, supported by line of cases from other states, is that an employer engages a workman with all his infirmities, including the infirmities of age, and upon the occurrence of an accident arising out of his employment the employer is responsible and liable for the ultimate effect upon his ability to find employment in and engage in his usual occupation—that if the sum total of his infirmities prevents him from finding employment in his usual occupation or engaging in it, he is entitled to be classed as totally and permanently disabled and compensated accordingly.

The conditions in New Mexico are quite different from those prevailing in industrial centers. According to United States Bureau of Labor statistics, there were employed in August of this year only 19,100 workers in mining and manufacturing in this state—a small percent of the working population of the commonwealth, and much less than half the number of New Mexicans

who have been discharged from the armed forces, many of them with infirmities.

Under plaintiff's interpretation of our law, the employers of these infirm men would be liable for their war infirmities in case of accidents to them arising in the course of their employment. The result of such holding would be that many of these men would be refused employment. Moreover, the employers of this state, with few exceptions, fall in the class of "small business," the survival of which has lately been the subject of discussion and legislation in the Congress.

The legislators who enacted our Workmen's Compensation Act were largely the sons of pioneers, who are slowly being educated out of the ideas of their fathers who believed that "every tub must stand upon its bottom." Instead of providing that the test should be the ability of the workman who had suffered an injury to resume his place in his *usual* employment, the act provided: "The purpose of such examination shall be to determine whether the workman has recovered so that his earning power *at any kind of work* is restored * * *" N.M. S.A., 1941 Comp., Sec. 57-925. (Emphasis added.)

This and other provisions of the statute clearly indicate that the proper test is not whether the injured workman is able to do the same kind of work as he did before the injury, but whether he is able to do any kind of work. Gonzales v. Pecos Valley Packing Co. et al., 48 N.M. 185, 146 P.2d 1017. The following comment states the case clearly:

"We have several times criticized the expression 'cannot compete in the open labor market'. It has no place in the workmen's compensation law. Of course, a man who has been disabled to the extent of 50 per cent of his earning capacity cannot compete in the open labor market with an equally good uninjured person. Nor can a man who has lost an eye, a leg or an arm, compete in the open labor market with men of equal ability who are sound in all their members. But that is not the criterion. If they are only partially disabled by their accidental injuries they receive compensation to the extent of their partial disability for the period fixed by law. If the injury is the permanent loss of a member, they are paid compensation for the number of weeks arbitrarily fixed by the statute (sec. 306c, 77 P.S. § 513). If the injury does not amount to the permanent loss of a member, but the disability is not total, they receive compensation, proportioned to their disability, during the period of such partial disability not exceeding 400 weeks (sec. 306b, 77 P.S. § 512). Where the claimant has received an accidental injury which lessens his earning power but still leaves him able to do some work, neither the board nor a court has authority to extend the pro-

visions of the Workmen's Compensation Act and award him compensation for total disability, instead of for partial disability, because, on account of his injury and consequent partial disability, he 'cannot compete in the open labor market' with normal, sound and uninjured persons. The Workmen's Compensation Act establishes no such standard and it is time that the use of this unauthorized and misleading phrase be discontinued. There is no warrant for it in the statute." Allen v. Dravo Corporation et al., 149 Pa.Super. 188, 27 A.2d 491, 492.

Nor does the testimony of plaintiff that he sought work and was unable to procure it entitle him to an award on the basis of total, permanent disability. The fact that he did not procure work does not prove that he could not perform it. Krnetich v. Oliver Iron Mining Co., 202 Minn. 158, 277 N.W. 525. Provision is now made by other legislation for losses due to unemployment.

Whether disability is total or partial is a fact question to be determined by the trier of the facts. The trial court saw and heard the plaintiff and determined that his industrial disability was 40%, and awarded him judgment on that basis. A compensation award must be sustained if there is substantial evidence supporting the conclusion of the court, even though the reviewing court might have arrived at a different conclusion if it had been the fact finding body. Lipe v. Bradbury, supra.

Finding no reversible error in the record, the judgment will be sustained. And an additional fee of $300.00 is hereby fixed and allowed plaintiff's attorneys on account of defendants' appeal. It is so ordered.

BICKLEY, J., CONCURS.

BRICE, Justice (concurring specially).

The workman is a common laborer, and the trial court has determined that while he could not do *hard work,* yet he had lost only forty percent of his earning capacity. This finding and the evidence satisfies me that he can still do the work of a common laborer, though not "hard work." The finding of the court mentioned is supported by substantial evidence, and therefore I agree that the judgment of the district court should be affirmed.

In my opinion it is not necessary to construe the words "permanent, total disability" as used in the Workmen's Compensation Act. This question has been posed in at least three cases (Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000; New Mexico State Highway Dept. v. Bible, 38 N.M. 372, 34 P.2d 295; Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864) and not decided because unnecessary to a decision in any of them. While the question was

raised in this case, it is unnecessary to a decision and I see no reason for deciding it at this time.

There is much confusion among the authorities as to the meaning of this phrase. It is held by some courts that a workman is totally disabled if he cannot perform the duties for which he had fitted himself by training and experience, or work of a similar character, and not whether he can engage in some other occupation foreign to his experience and training. Thompson v. Leach & McClain, La.App., 11 So.2d 109. Other courts hold it to mean the loss of one's earning power as a workman whether manifested by inability to perform work obtainable, or inability to secure work on that account. Consolidation Coal Co. v. Ditty, 286 Ky. 395, 150 S.W.2d 672. Another court holds that it must appear from the evidence either that the workman is not able to do even light work of a general character and that his earning capacity is entirely destroyed, or that remunerative employment is not available to him. Hughes v. H. Kellogg & Sons, 139 Pa. Super. 580, 13 A.2d 98.

Our workmen's compensation statutes are copied largely from the laws of Colorado, and the Supreme Court of that state doubts if any of these rules are satisfactory for all cases. That court said, in Globe Indemnity Co. v. Industrial Commission of Colorado, 67 Colo. 526, 186 P. 522, 523:

"It appears that the rule contended for by plaintiffs in error for determining the 'impairment of earning capacity of claimants,' and which we will designate as 'Rule No. 1,' is, 'The degree of disability is to be determined by the claimant's general impairment of earning capacity without respect to any particular kind of labor,' to support which the following, among other authorities, are cited: Grammici v. Zinn, 219 N.Y. 322, 114 N.E. 397; Boscarino et al. v. Carfagno & Dragonette, Inc., 220 N.Y. 323, 115 N.E. 710, Ann.Cas.1918A, 530; Modra v. Little, 223 N.Y. 452, 119 N.E. 853, Ann.Cas.1918D, 177. Whereas, the rule contended for by defendants in error, and which we will designate as 'Rule No. 2,' is, 'The degree of disability is to be determined by the claimant's impairment of earning capacity as it relates to the kind of labor at which he was employed when injured,' to support which the following, among other authorities, are cited: Duprey v. Maryland Cas. Co., 219 Mass. 189, 106 N.E. 686; Gillen v. O. A. & G. Corp., 215 Mass. 96, 102 N.E. 346, L.R.A.1916A, 371. Both of these contentions may be wrong, as a simple illustration will demonstrate.

"An expert engraver, past middle age, engaged for years in that business, commanding high wages thereat and having no other special skill and no other regular occupation, is temporarily employed at very low wages carrying brick and mortar in a wheelbarrow in building construction.

While so employed he sustains an injury to his right hand, trivial in its effect to incapacitate him for general work, but making it wholly impossible for him ever again to secure employment as an engraver. Both the language and spirit of the act would be violated in his case by the application of Rule No. 1.

"The same man, under the same circumstances, engaged in the same occupation, sustains an injury to his foot of such a character as to permanently incapacitate him from running a wheelbarrow, but having no effect whatever upon his earning capacity as an engraver. Both the language and spirit of the act would be violated in his case by the application of Rule No. 2.

"We are of the opinion that the widest possible discretion is vested in the commission to determine whether, under a given set of circumstances and a particular state of the evidence, the first or second rule, or a combination of both, should be applied.

Age, education, training, general physical and mental capacity, and adaptability, may, and often should, be taken into consideration in arriving at a just conclusion as to the percentage of impairment of earning capacity."

■ I do not pass upon the question; but I do not subscribe to the doctrine stated by Mr. Justice HUDSPETH, "This and other provisions of the statute clearly indicate that the proper test is not whether the injured workman is able to do the same kind of work as he did before the injury, but whether he is able to do *any kind of work.*"

That this statement is too broad is quite evident. I know of no case going so far. The workman would have to be paralyzed before it could be said that he was totally disabled. See Cleland v. Verona Radio, 130 N.J.L. 588, 33 A.2d 712.

SADLER, C. J., and LUJAN, J., concur.