369 P.2d 777

Willie P. ROMERO, Claimant,
Plaintiff-Appellee,

v.

H. A. LOTT, INC., Employer, and Travelers
`Insurance Co., Insurer, Defendants-
Appellants.

No. 6860.

Supreme Court of New Mexico.

March 14, 1962.

Seth, Montgomery, Federici & Andrews, Santa Fe, for appellant.

Edwin L. Felter, Santa Fe, for appellee.

NOBLE, Justice.

This appeal is from a judgment awarding workmen's compensation payments for total permanent disability, increased by 50% for failure of the employer to provide a safety device. The judgment was entered pursuant to findings by a jury.

Two grounds are relied upon for reversal, both of which are based upon the claimed lack of substantial evidence to support the jury's findings. It is first urged that the finding of total permanent disability is without substantial support in the evidence because all of the evidence is based upon claimant's subjective symptoms and the degree of disability is flatly contradicted by all the medical testimony. Appellants rely strongly upon Waller v. Shell Oil Co., 60 N.M. 484, 292 P.2d 782 and contend that decision is controlling.

Appellee was accidentally injured on December 6, 1957 by falling from a platform or scaffold, four feet in width, located at the top level of the first story of a building under construction. He was employed as a common laborer at Los Alamos and was pushing a wheelbarrow, loaded with a butane tank, along the walkway when he fell to the cement floor, fracturing his wrist and striking his head on the floor rendering him unconscious for approximately 24 hours. He remained in the hospital for about two weeks and was under the care of Dr. Oakes for some two years. Appellee was 50 years of age, had a fifth-grade education, and had always worked as a common laborer.

Dr. Oakes and Dr. Yordy, presented by appellee, testified that in their opinion the accident resulted in injury and damage to the 5th, 6th and 12th cranial nerves, resulting in brain damage which had shown no improvement. Both doctors testified that in their opinion appellee was totally and permanently disabled from performing manual labor and should not seek employment.

Appellants, however, point to the cross-examination of Drs. Oakes and Yordy and particularly to the testimony of Dr. Yordy in which he testified he thought appellee could do gardening and irrigation work. Appellants' argument is that if the claimant can perform certain tasks of gainful em-

ployment the finding of total disability is flatly contradicted and the evidence to support the finding of total disability is denied substantial character. A careful review of the evidence, however, makes it clear to us that the medical testimony as to appellee's ability to perform any work was qualified by the statement that even such work could only be done if no power tools were involved; that there would be no objects which could get in his way; if he could take his own time to perform the work; and, that such work was under close supervision where he could not endanger himself. We do not view the medical evidence offered by appellee as contradicting the finding as to the extent of disability, nor within the rule of Waller v. Shell Oil Co., supra.

■ Furthermore, as to whether the fact that a claimant who can perform certain limited work is totally disabled within the meaning of the Workmen's Compensation law, we said in Rhodes v. Cottle Construction Co., 68 N.M. 18, 357 P.2d 672:

"Total disability, within the Workmen's Compensation Act, may be said to exist when, considering the age, education, training, general physical and mental capacity and adaptability of the workman, he is unable by reason of his accidental injury to obtain and retain gainful employment. Seay v. Lea County Sand and Gravel Co., 60 N.M. 399, 292 P.2d 93."

It was further said in Rhodes that:

"The ability to perform certain limited functions of the workman's trade does not necessarily mean that he can obtain or retain gainful employment. A workman may be able to perform certain limited portions of his trade and still, by reason of his accidental injury, be unable to perform other duties generally required of one in his trade and by reason thereof be unable to obtain or retain employment in that trade."

■ A careful review of the evidence discloses nothing that would impair the jury's finding of total and permanent disability as a result of the accidental injury sustained by appellee. See Lipe v. Bradbury, 49 N.M. 4, 154 P.2d 1000; Helms v. New Mexico Ore Processing Co., 50 N.M. 243, 175 P.2d 395; Smith v. Spence & Son Drilling Co., 61 N.M. 431, 301 P.2d 723.

Appellants attack the finding of the jury that the employer failed to provide a safety device in general use as being unsupported by substantial evidence. Laws 1955, Ch. 29, § 1, provides:

"* * * if an injury to, * * * a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman, then the compensation otherwise payable under the Workmen's

Compensation Act shall be increased by fifty (50%) per centum."

It is contended that a handrail or guard along such a platform or scaffold as was used here, and from which appellee fell, is a safety device in general use in the building industry. It is conceded that such a handrail was not provided. The jury's determination of facts is conclusive on an appellate court where the verdict or finding is supported by substantial evidence, and will be set aside only where there is no substantial evidence to support it. Summerford v. Sovereign Camp, W. O. W., 40 N. M. 330, 59 P.2d 893; Viramontes v. Fox, 65 N.M. 275, 335 P.2d 1071; Johnson v. Nickels, 66 N.M. 181, 344 P.2d 697.

The only evidence pointed to as supporting the finding is the testimony of the witness Rodriguez produced by appellee. He testified that for almost six years he has acted as business representative of a carpenter's union, and that among his duties was that of seeing that safety precautions were observed by both employees and employers. As such representative, he had gone upon many buildings in the course of construction by various contractors and at various stages of construction. Prior to becoming a union representative, he had been a journeyman carpenter and apprentice carpenter, all of the time in New Mexico. The witness testified that a handrail on such a platform is a safety device in general use in the building construction industry.

Appellants call attention to the fact that notwithstanding his testimony that a handrail is in general use by contractors on such buildings, Rodriguez only named two or three contractors he had observed using it; to contradictions on cross-examination; and, to his testimony with reference to his understanding of the meaning of a device in general use. These, it is urged, deny his testimony substantial character to support the finding that the handrail was in general use. Specifically, it is asserted that the testimony of a witness must be considered as a whole and that isolated statements later contradicted by the same witness are not substantial in character. While the testimony of the witness may have been weakened by the cross-examination, we cannot say that its substantial character was destroyed. Mere inconsistencies or perhaps contradictions in the testimony of a witness only affect his credibility and it is the duty of the trier of the facts to weigh the evidence, determine the credibility of the witness and the weight to be given the testimony, and, where the truth lies. Rice v. First National Bank in Albuquerque, 50 N.M. 99, 171 P.2d 318.

We have held that custom or usage is a matter of fact and not of opinion. Briggs v. The Zia Company, 63 N.M. 148, 315 P.2d 217; but, that proof of the fact

may be established either by testimony of specific uses, Jones v. International Minerals and Chemical Corporation, 53 N.M. 127, 202 P.2d 1080, or by evidence of general practice of contractors, Apodaca v. Allison & Haney, 57 N.M. 315, 258 P.2d 711. See Briggs v. The Zia Company, supra.

Regarding the understanding of the witness as to the meaning of the term "general use," the following testimony on cross-examination is pointed to:

"A. It is in general use."

\*   \*   \*   \*   \*   \*

"Q. What do you mean by 'general use'?

"A. My understanding of 'general use' would be something that is known to contractors and people involved in the construction industry.

"Q. Just known to others?

"A. That is in general use. I don't mean it to mean that in general use that every contractor uses it.

"Q. Or that most contractors use it?

"A. Or that most contractors use it.

"Q. If I understand your answer, you don't mean to say that most contractors use a railing of this sort; some do but you don't mean to say—

"A. I wouldn't say more than half or less than half."

Appellants strongly urge that this testimony shows that the witness did not understand the term "safety device in general use" to mean one used by most contractors thereby robbing it of substantial character to support appellee's position.

A careful examination of the testimony of the witness Rodriguez persuades us that it may reasonably be inferred from it that he had seen many buildings under construction and that at heights such as in the instant case, he had seen such handrails used by many contractors, although he could not testify whether actually more or less than half of them used it.

While the term "general use" as employed in the Workmen's Compensation statute has not been precisely defined in this jurisdiction, nor do we find it exactly defined by the courts of other jurisdictions, our decisions have discussed the question of what constitutes "general use" of a safety device within an industry. The definition of "commonly" given in Webster was quoted in Webb v. New Mexico Publishing Co., 47 N.M. 279, 141 P.2d 333, 148 A.L.R. 1002, as:

"\*   \*   \* 'In a manner or degree that is common; usually; generally; ordinarily; frequently; for the most part; familiarly.' And 'common' is defined 'Belonging or pertaining to many or to the majority; generally or prevalent. \*  \*  \* of frequent or

ordinary occurrence or appearance; familiar by reason of frequency. Pertaining to, affecting or applicable to many or the greatest number of persons, cases or occasions; prevalent, usual; extensive though not universal.' Usual is defined as 'Such as is in common use; such as occurs in ordinary practice or in the ordinary course of events, customarily, ordinarily, habitual, common.'"

Webster's Third International Dictionary, 1961, includes "prevalent, usual, widespread" among other definitions of "general."

██ Viewing the evidence in the light most favorable in support of the finding, as we must, we think it substantially supports the fact that the use of such handrail as a safety device was "prevalent," "usual," "extensive though not universal" and "widespread" by those engaged in the building industry, and substantially supports the verdict of the jury on the issue of the safety device.

Appellee urges us to include a provision requiring interest at six per cent on the judgment awarding compensation. That matter is not properly before us on this appeal. The trial court has not denied interest.

Finally, appellee asks us to increase the attorneys fees allowed by the trial court for trial of the case in the court below.

No objection was made to the award of attorneys fees by the trial court and no error was preserved for review on appeal. Attorneys fees in the sum of $750.00 will be awarded to appellee for attorneys fees on this appeal.

Finding no error, the judgment is affirmed. It is so ordered.

COMPTON, C. J., and MOISE, J., concur.

CARMODY and CHAVEZ, JJ., not participating.